**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNIVERSAL MARITIME CORPORATION,
Petitioner,

v.

FRANK MOORE; DIRECTOR, OFFICE OF

No. 96-2612

WORKERS' COMPENSATION PROGRAM;
UNITED STATES DEPARTMENT OF
LABOR,
Respondents.

On Petition for Review of an Order
of the Benefits Review Board.
(95-575)

Argued: June 5, 1997

Decided: September 16, 1997

Before WIDENER and NIEMEYER, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Vacated and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Judge Widener and Senior Judge Michael
joined.

_____

**COUNSEL**

**ARGUED:** Stephen Edward Darling, SINKLER & BOYD, P.A.,
Charleston, South Carolina, for Petitioner. Ralph R. Lorberbaum,

ZIPPERER & LORBERBAUM, P.C., Savannah, Georgia, for Respondent Moore; Mark A. Reinhalter, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director. **ON BRIEF:** J. Davitt McAteer, Acting Solicitor of Labor, Carol A. De Deo, Associate Solicitor, Laura J. Stomski, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director.

_____

**OPINION**

NIEMEYER, Circuit Judge:

On appeal of an award to Frank Moore of benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., for permanent total disability, we reverse and remand because we conclude that (1) the Administrative Law Judge ("ALJ") erred as a matter of law in applying the statutory presumption under 33 U.S.C. § 920(a) to presume that Moore's back pain was caused by a work-related accident; (2) the ALJ erred in finding permanent total disability without any medical evidence of maximum improvement with respect to Moore's back problem; (3) the ALJ erred as a matter of law in refusing to credit a vocational survey on the ground that Moore's employer failed to interview potential employers in the community offering alternative jobs; and (4) the ALJ failed to follow 33 U.S.C. § 910 in computing Moore's average weekly wage. We reject the employer's other assignments of error and affirm the ALJ's rulings refusing to admit a surveillance videotape and finding that the employer's application for relief from the special fund under 33 U.S.C. § 908(f) was forfeited, although we affirm the latter ruling for reasons other than those given by the ALJ.

I

On November 18, 1991, Frank Moore fell from a ladder when it slipped, and he struck his knee on the floor, injuring it. At the time, Moore was working as a container repairman for Universal Maritime Corporation in Mt. Pleasant, South Carolina. Two months after the fall, Moore filed a workers' compensation claim for temporary total disability caused by injury to his "right leg and right knee joint."

2

Moore was a longtime employee who had completed the eighth grade and had reading and mathematical skills at the third grade level. He had worked for years as a self-trained repairman of large containers used for shipping. His job involved kneeling, crouching, and climbing, as well as strenuous lifting of at least up to 50 pounds. Prior to his November 1991 fall from the ladder, Moore had complained of back pain and had suffered injuries to his ribs, left hand and <u>left</u> knee. Even though he has a documented reduction of function in his left knee, he had been able to perform his job as a container repairman.

Following his November 1991 fall, Moore was treated by Dr. Howard Brilliant, an orthopedist who had regularly treated Moore for various ailments. When Moore's right knee did not respond to treatment, Dr. Brilliant performed arthroscopic surgery on the knee on March 2, 1992, removing loose debris from the joint. Dr. Brilliant believed his surgery to have secured all of the improvement to Moore's knee that was then available. But because Moore continued to complain of pain and to miss work, at Universal Maritime's urging, Moore was examined by Dr. Bright McConnell, a knee specialist. Dr. McConnell performed a second surgery on October 22, 1992 to repair a tear in the meniscus. This second surgery appeared to improve Moore's knee condition, which reached maximum improvement, in Dr. McConnell's opinion, in January 1993. Dr. McConnell concluded that Moore had suffered a permanent 15% impairment in his right knee as the combined result of the injury and of degenerative arthritis. He noted that this impairment would require some work restrictions. Dr. Brilliant, on the other hand, gave an opinion that Moore was totally and permanently disabled as of March 1992, when Dr. Brilliant performed the arthroscopic knee surgery.

Moore never returned to work after his second surgery, citing among other things the combination of the impairments in both knees, his need to wear a knee brace on the injured right knee, and his need to use a cane for balance.

At his hearing for workers' compensation, Moore presented evidence not only of his knee injury, but also of back problems which limited his ability to bend and lift. While the effects of Moore's back problem were adequately documented at the hearing, evidence regarding its nature and origin was sparse and confusing. Moore had a his-

3

tory of low back pain predating the 1991 fall from the ladder. But in a report dated January 1992, only two months after the fall, examining physician Dr. Warren specifically noted that Moore "does not complain of back pain." By the summer of 1992, some eight months after the accident, a first report of back pain was made by Dr. McConnell, who had performed the second surgery on Moore's knee, reporting that Moore "is complaining of some low back discomfort with pain down the lateral aspect of his right side and right lower leg." And on November 6, 1992, almost a year after the fall, Dr. Brilliant first reported a complaint from Moore of back pain, noting "since he was here last he had developed back pain."

At the hearing before the ALJ, Moore testified that when he woke up one day in November 1992, about a year after the fall, he experienced serious pain in his back:

> I couldn't move and I did manage to get up out of the bed and make it, and get in my automobile and go to the hospital to find out what was going on because I had never had that pain before and I never was drawn up in a knot like that.

Elsewhere in his testimony, Moore acknowledged that he had also suffered back pain as a result of an earlier injury that preceded the 1991 fall. Medical records relating to that fact showed that within the month before the fall Moore complained of pain in his back. At another point during the hearing, Moore testified that after his fall, both his knee and his back were "bothering him" and that he had been "complaining about my back ever since I had the injury. No one has ever done anything about my back." This testimony replaced his pre-hearing statement that the back pain was a result of gait changes caused by the knee injury, a theory which would make the back pain secondary and not a direct result of the fall. No medical records provided support for the gait-change theory in any case, nor did any medical professional express any opinion as to the cause of the back pain, although Dr. Brilliant did state that Moore was suffering from arthritis of the back subsequent to his accident. Finally, medical records expressed no opinion as to the prognosis for Moore's back pain, including whether the condition had reached its maximum improvement.

4

In his opinion awarding benefits for permanent total disability under § 8(a) of the Longshore and Harbor Workers' Compensation Act, the ALJ stated that:

> The medical reports of Dr. Brilliant as well as claimant's complaints and symptoms of pain established that his right knee and back injuries <u>could have been</u> caused by the November 18, 1991 work related accident, and thus, under § 20(a), <u>it is presumed</u> that claimant's right knee and back injuries were caused by the November, 1991 accident.

(Emphasis added). The ALJ also concluded that Universal Maritime had not rebutted the § 20(a) presumption of causation because "the reports of Dr. McConnell and Dr. Shutte are given less weight than those of Dr. Brilliant."

In finding permanent total disability, the ALJ determined that Moore was incapable of returning to his prior job and rejected evidence that suitable alternative work was available in the community because the employer had not adequately considered the limitations on Moore as a result of the pre-existing reduction of function in his left knee and his poor education and it had not contacted the prospective alternative employers to determine the full requirements for the available jobs. The ALJ rejected the employer's evidence of job descriptions taken from the Dictionary of Occupational Titles, published by the Department of Labor.

The decision of the ALJ was affirmed by the Benefits Review Board by operation of law, pursuant to the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, § 101(d), 110 Stat. 1321, 1321-29 (1996), providing that certain decisions pending before the Benefits Review Board for more than one year are to be considered affirmed for purposes of seeking judicial review. This appeal followed.

II

Universal Maritime's chief complaint about the Board's decision centers on the manner in which the ALJ considered Moore's back

5

pain to conclude that Moore was totally and permanently disabled. Universal Maritime contends that the ALJ gave virtually conclusive weight to the presumption afforded by § 20(a) of the Longshore and Harbor Workers' Compensation Act (hereinafter "the Act"), 33 U.S.C. § 920(a), that Moore's back claim came within the provisions of the Act and therefore failed to make the necessary factual determinations about whether the back pain was caused by Moore's fall in November 1991 from the ladder.

The ALJ relied on evidence of back pain first reported approximately eight months after Moore's accident and on Moore's testimony that he had been experiencing back pain since the date of the accident. The ALJ concluded that because the back injury "could have been caused by the November, 1991 work related accident" that injury "is presumed to have been caused" by the 1991 accident. After summarizing some of the employer's evidence that cast doubt about the cause of Moore's back pain -- relating to Moore's credibility and the absence of any contemporaneous reports of pain-- the ALJ concluded that the evidence was "insufficient to rebut the § 20(a) presumption of causation." Accordingly, the ALJ continued to consider the presumption as evidence, weighing it against the employer's evidence: "The employer has not met its burden of rebutting the § 20(a) presumption of causation as the reports of Dr. McConnell and Dr. Shutte are given less weight than those of Dr. Brilliant." Before addressing Universal Maritime's argument, it will be useful to review the nature and scope of the statutory presumption created by the Act.

Section 20(a) of the Act, 33 U.S.C. § 920(a), provides in pertinent part, "In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary . . . that the claim comes within the provisions of this chapter." The presumption is a broad one, and advances the facility with which claims are to be treated to further the Act's purpose of compensating injured workers regardless of fault. But that procedural facilitating device is not a substitute for substantive evidence which an injured worker must present to be entitled to compensation. See U.S. Industries/Federal Sheet Metal, Inc. v. Director, OWCP, 455 U.S. 608, 614 n.7 (1982) ("As Professor Larson warns, `[n]o amount of informality can alter the elementary require-

6

ment that the claimant allege and prove the substance of all essential elements in his case'").

In order for the presumption to apply, a claim must be made that brings an injury within the outer scope of the Act. As the Court in U.S. Industries stated, "A prima facie `claim for compensation,' to which the statutory presumption refers, must at least allege an injury that arose in the course of employment as well as out of employment." 455 U.S. at 615. Thus, an employee seeking to have the benefit of the statutory presumption must first allege (1) an injury or death (2) that arose out of and in the course of (3) his maritime employment. To this claim attaches a presumption of coverage by the Act, shifting the burden of proceeding further to the employer. While the presumption thus facilitates the presentation of a claim, it provides "no substitute for the allegations necessary to state a prima facie case." Id. at 616.

If an employer does not offer substantial evidence to rebut the presumption, it is true that the presumption provided by § 20 will entitle a claimant to compensation. See Del Vecchio v. Bowers, 296 U.S. 280, 284-85 (1935). When the employer, however, does offer evidence sufficient to justify denial of a claim, the statutory presumption "falls out of the case" and does not remain as evidence that is weighed in finding facts. Id. at 286. Rather the issues then must be resolved only on the evidence in the case. As the Supreme Court explained in Del Vecchio:

> If the employer alone adduces evidence which tends to support the theory [contrary to the presumption], the case must be decided upon that evidence. Where the claimant offers substantial evidence in opposition, . . . the issue must be resolved upon the whole body of proof pro and con; and if it permits an inference either way upon the question. . ., the Deputy Commissioner and he alone is empowered to draw the inference; his decision as to the weight of the evidence may not be disturbed by the court.

Id. at 286-87. Thus, the statutory presumption created by 33 U.S.C. § 920 functions similarly to the presumption created by Rule 301 of the Federal Rules of Evidence and the proof scheme under Title VII

7

of the Civil Rights Act of 1964 as described in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). See U.S. Industries, 455 U.S. at 612 n.5.

In the case before us, Moore testified that he experienced back pain immediately after the accident in November 1991. Even though it may appear incredible in light of Moore's other testimony, his pre-hearing statement to Dr. Warren that he was not experiencing back pain, and the absence of any complaint to his other doctors, the ALJ was entitled to credit Moore's testimony that the back pain resulted from the accident itself. Because of this testimony establishing a prima facie case, Moore's claim was properly given the benefit of the presumption created by 33 U.S.C. § 920(a). But the ALJ then ignored the legal import of evidence rebutting this presumption. Once evidence is presented that could support a finding against Moore, the presumption falls out of the case, and the ALJ is required to weigh only the evidence, not the presumption itself. The ALJ, however, continued to treat the presumption as substantive evidence and, in doing so, erred.

The employer's rebuttal evidence would undoubtedly support a finding that Moore's back pain was not caused by the accident. As the ALJ observed, "Dr. Brilliant's post-accident medical records indicate no sign of back complaints until [a year after the accident]." Moreover, Dr. Warren affirmatively reported two months after the accident that Moore "does not complain of back pain." Indeed, no medical report refers to any back pain until more than one-half year after the accident when Dr. McConnell first refers to Moore's complaint of "some low back discomfort." While the evidence indicating the absence of any back pain complaint for six to eight months after the accident and the affirmative statement of Dr. Warren placed causation squarely at issue, there is also evidence in the record that Moore had experienced back problems prior to the accident to which any later back pain could have been attributed. All of this evidence is sufficient to justify a factfinder to conclude that the back pain was not caused by the accident but rather by either a pre-existing condition or a subsequent unrelated deterioration. While substantial evidence requires "more than a mere scintilla," it is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting

8

Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938)). Under this standard, the evidence that Universal Maritime presented casting doubt on the causative link between Moore's November 1991 fall and his subsequent back pain was sufficient as a matter of law to cause the statutory presumption afforded by 33 U.S.C.§ 920(a) to drop from the case. See Del Vecchio, 296 U.S. at 286. The ALJ was then left with the task of weighing the evidence in the record. Rather than doing that, the ALJ continued to weigh the employer's evidence against the weight of the presumption as if the presumption were evidence.

Accordingly, it is necessary to remand the case to permit the ALJ to apply the statutory presumption in the proper manner.

III

Universal Maritime also contends that Moore failed to introduce evidence sufficient to find permanent disability as a result of his back pain. In order to make a finding of permanent disability, there must be substantial evidence that the condition alleged to be disabling has reached maximum medical improvement. See SGS Control Serv. v. Director, OWCP, 86 F.3d 438, 443-44 (5th Cir. 1996); Director, OWCP v. Berkstresser, 921 F.2d 306, 312 (D.C. Cir. 1991). Although there was evidence of maximum improvement with regard to Moore's knee, there was no opinion from any source as to the prognosis for Moore's back condition. Thus, the ALJ also erred in finding total and permanent disability based in part on the limitations of Moore's functional ability caused by his back.

IV

Universal Maritime contends that the ALJ abused his discretion in excluding from evidence at the hearing a surveillance videotape of Moore which Universal Maritime sought to introduce even though it had not included the tape on its pre-hearing list of exhibits. Universal Maritime noted that the tape did not exist before the weekend preceding the Monday hearing so that it could not have included the tape on a pre-hearing list.

9

Evidentiary matters at hearings under the Longshore and Harbor Workers' Compensation Act are governed by 29 C.F.R.§ 18.103, which states in relevant part:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and . . . [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

29 C.F.R. § 18.103(a)(2).

In this case, Universal Maritime did not mark the videotape for identification, nor did it make a proffer of its contents. Rather it simply stated that the videotape was "material" and that it was the product of a recent surveillance. Accordingly, we have nothing in the record by which we can review the nature of the evidence excluded. Even on appeal, Universal Maritime does not describe precisely what the videotape would show, making it impossible for us to determine whether its exclusion should be found to be plain error despite the failure to make a proffer. See 29 C.F.R.§ 18.103(c). Accordingly, on the record before us, we can find no abuse of discretion by the ALJ in excluding the videotape from evidence.

V

Universal Maritime next challenges the ALJ's finding that Moore is totally disabled.

To determine whether disability is partial or total involves a shifting proof scheme. Once a claimant establishes that he is incapable of returning to his prior employment, the burden shifts to the employer to prove that the claimant is not totally disabled by presenting evidence of other jobs that are available in the relevant geographic market for which the claimant is physically and educationally qualified. See Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 542 (4th Cir. 1988).

10

In this case, the employer challenges first the substantiality of the evidence supporting the ALJ's conclusion that Moore was incapable of returning to his prior position as a container repairman. Although the ALJ possibly relied in part on the evidence of Moore's back pain to which he erroneously applied the § 920(a) presumption to establish causation, even in the absence of that evidence we believe that there is substantial evidence from which the ALJ could have concluded that, as a result of the condition of both knees, Moore was incapable of performing the bending and climbing required by his former work.

Universal Maritime's second argument, that the ALJ erred in refusing to credit its survey of available alternative employment, is more substantial. To meet its burden of demonstrating the availability of alternative employment, Universal Maritime presented the testimony of a vocational surveyor who derived a list of available positions from want ads and listings in the local employment office. To flesh out the physical and educational demands of each advertised position, the expert relied on standard job descriptions found in the Dictionary of Occupational Titles, published by the United States Department of Labor. The ALJ rejected the validity of the survey, however, based in part upon the vocational expert's failure to contact the prospective employers to ascertain specifically their requirements for the listed positions. Without other evidence of available alternative employment, the ALJ found Moore to be totally disabled.

Our precedents establish that to meet the burden of showing the availability of alternative work, the employer need not contact prospective employers to inform them of the qualifications and limitations of the claimant and to determine if they would in fact consider hiring the candidate for their position. See Newport News Shipbuilding, 841 F.2d at 542; Trans-State Dredging v. Benefits Review Board, 731 F.2d 199, 201 (4th Cir. 1984). But we have never before determined whether the defendant employer must contact the prospective employers in his survey to obtain their specific job requirements before determining whether the claimant would be qualified for such work.

Such a requirement, like that rejected in Newport News Shipbuilding and Trans-State Dredging, would, we believe, substantially increase the employer's burden without a commensurate bene-

11

fit. Although requiring such specific description might increase the precision of vocational surveys, such precision is not necessary since the claimant is able to correct any overbreadth in a survey by demonstrating the failure of his good faith effort to secure employment. See Newport News Shipbuilding, 841 F.2d at 542.

Accordingly, we hold that the employer may meet his burden of responding to a total disability claim by demonstrating the availability of specific jobs in a local market and by relying on standard occupational descriptions to fill out the qualifications for performing such jobs. The employer need not contact the prospective employer for its specific requirements in order to establish a valid vocational survey. In adopting this rule, we impose a burden parallel to that required by other compensation schemes such as Social Security Disability Insurance and Railroad Retirement Act disability benefits, both of which rely on standard occupational descriptions, including those provided in the Dictionary of Occupational Titles. See 20 C.F.R. §§ 404.1566(d)(1) & 220.131(d)(1).

VI

Universal Maritime also challenges the manner in which the ALJ determined Moore's average weekly wage for purposes of awarding compensation. The ALJ calculated Moore's average weekly wage by taking his annual earnings for calendar year 1991 as reported on his W-2 forms and dividing that number by 46, the number of weeks that Moore worked in 1991 prior to his accident in mid-November. Moore did not work for the remainder of the calendar year. The ALJ added to this number the annual amount of container royalties, holiday, and vacation pay for 1991, divided by the full 52 weeks of the year. Contending that this method of calculation artificially inflated Moore's average weekly wage, Universal Maritime argues instead that the ALJ should have taken Moore's total salary not for calendar 1991 but for the 52 week period preceding the accident and should have divided this number by 52 weeks to determine the average weekly wage, despite the fact that Moore was absent from work without earnings during 9 of the 52 weeks preceding the accident.

We conclude that neither of the foregoing calculations conforms to the method specified by § 10(a) of the Act, 33 U.S.C. § 910(a). Sec-

12

tion 10(a) states, "[i]f the injured employee shall have worked in the employment in which he was working at the time of the injury . . . during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of[a multiple of] the average daily wage . . . which he shall have earned in such employment during the days when so employed." 33 U.S.C. § 910(a) (emphasis added). Thus, the proper inquiry requires the ALJ to determine the total income earned by the claimant in the 52 weeks prior to the accident and to divide that sum by the actual number of days for which the employee was paid to determine an average daily wage. This daily wage must then be multiplied by 300 if the ALJ determines the claimant to have worked a 6-day week, or by 260 if the claimant worked a 5-day week, yielding the claimant's average yearly salary. See 33 U.S.C. § 910(a). Finally, this yearly number must be divided by 52 to yield the average weekly wage. See 33 U.S.C.§ 910(d)(1); see also Diosdado v. Newpark Shipbuilding & Repair, Inc., B.R.B. No. 96-1585, 1997 WL 369949, at *6 (Ben. Rev. Bd. June 10, 1997). Accordingly, if Moore is to be awarded compensation, the amount must be calculated in accordance with 33 U.S.C.§ 910(a) and (d)(1).

VII

Finally, Universal Maritime contends that it is entitled to mitigation of its future liability by recourse to the special injury liability fund, established under 33 U.S.C. § 944 and administered under 33 U.S.C. § 908(f). Under § 908(f), an employer may mitigate the extent of its liability for the payment of compensation by showing that the injury for which it has responsibility under the Act would not have resulted in total permanent disability but for the presence of a pre-existing condition of which it was aware. See Director, OWCP v. Newport News Shipbuilding & Dry Dock Co., 8 F.3d 175, 182 n.5 (4th Cir. 1993). If the employer meets this burden, his liability for compensation will be limited to the benefit payments which would be available for the partial disability resulting from the work-related accident alone, generally payable for the number of weeks specifically designated by statute in relation to that injury or for 104 weeks. See 33 U.S.C. § 908(f)(1). The remainder of the claimant's award, constituting the difference between the employer's portion and the award for permanent total disability, will be paid from a statutory fund to which the employer shall have contributed. See 33 U.S.C. § 908(f)(2).

13

Because Universal Maritime did not earlier assert a defense claiming recourse to the special injury fund, thereby denying the Director of OWCP the opportunity to defend the fund, the ALJ denied its post-hearing request to consider the defense for the first time on motion for reconsideration. Universal Maritime argues that this was error in light of its efforts to preserve the claim before hearing and the conditional nature of its defense of the case. The issue thus presented is whether Universal Maritime forfeited its claim for§ 908(f) relief by raising it for the first time in its motion for reconsideration.

Prior to 1984, § 8(f) of the Act, 33 U.S.C.§ 908(f), contained no explicit restrictions on the time for raising a claim for relief under its provisions. See Pub. L. No. 98-426, § 8(e)(5), 98 Stat. 1646 (amending 33 U.S.C. § 908(f) to add paragraph (f)(3)). Cases decided under the pre-1984 version of § 8(f) nonetheless construed it as requiring the claim for special fund apportionment to be raised at the first available opportunity, generally no later than the initial hearing before the ALJ. See Brady-Hamilton Stevedore Co. v. Director, OWCP, 779 F.2d 512, 513-14 (9th Cir. 1985) (§ 8(f) relief must be sought at first hearing before ALJ or be waived); Verderane v. Jacksonville Shipyards, Inc., 772 F.2d 775, 778-79 (11th Cir. 1985) (where § 8(f) relief claim was not raised at first hearing before ALJ, right was waived and employer could not raise it during proceedings before ALJ on remand ordered by BRB to resolve discrete statutory coverage issue); American Bridge Division v. Director, OWCP, 679 F.2d 81 (5th Cir. 1982) (where employer had belatedly mentioned argument for § 8(f) relief during informal proceedings before deputy commissioner but neither listed it as issue for resolution by ALJ on pre-hearing form nor raised it in actual hearing before ALJ, employer could not raise it for first time on review of ALJ's award of total disability benefits).

Under the pre-1984 version of the law, the Director of OWCP, who is charged with representing the special injury fund, was usually unrepresented at the hearing before the ALJ, and thus, assertions of entitlement to § 8(f) relief often went uncontradicted when raised for the first time at the hearing. See 51 Fed. Reg. 4270, 4277-78 (February 3, 1986) (reviewing history of actions under prior 33 U.S.C. § 908(f) and legislative history of new § 908(f)(3)); cf. American Bridge Division, 679 F.2d at 83 n.4 & n.5 (suggesting that when § 8(f) relief is raised for first time at hearing before ALJ, he should

14

suspend decision on that point and remand to deputy commissioner for recommendation).

To remedy this problem, Congress amended § 8(f) in 1984 to require that entitlement to § 8(f) relief be raised and documented earlier, during informal proceedings before the deputy commissioner. That section as amended and as here applicable states:

> Any request . . . for apportionment of liability to the special fund . . . for the payment of compensation benefits, and a statement of the grounds therefore, shall be presented to the deputy commissioner prior to the consideration of the claim by the deputy commissioner. Failure to present such request prior to such consideration shall be an absolute defense to the special fund's liability for the payment of any benefits in connection with such claim, unless the employer could not have reasonably anticipated the liability of the special fund prior to the issuance of a compensation order.

33 U.S.C. § 908(f)(3). Regulations implementing this statute give extensive directions for the filing of an application with the district director during the informal portion of the claim process. See 20 C.F.R. § 702.321(b)(1) &(2); see generally 33 U.S.C. § 919 (explaining claim procedure); 20 C.F.R. §§ 702.301-702.319. And when the claim cannot be resolved without a formal hearing and is referred to the Office of Administrative Law Judges ("OALJ") for a hearing, the regulation provides with regard to an application for special fund relief:

> Where the claimant's condition has not reached maximum medical improvement and no claim for permanency is raised by the date the case is referred to the OALJ, an application need not be submitted to the district director to preserve the employer's right to later seek relief under section 8(f) of the Act. In all other cases, failure to submit a fully documented application by the date established by the district director shall be an absolute defense to the liability of the special fund. This defense is an affirmative defense which must be raised and pleaded by the Director. The absolute defense will not be raised where permanency was not an issue before

15

the district director. In all other cases, where permanency has been raised, the failure of an employer to submit a timely and fully documented application for section 8(f) relief shall not prevent the district director, at his/her discretion, from considering the claim for compensation and transmitting the case for formal hearing. The failure of an employer to present a timely and fully documented application for section 8(f) relief may be excused only where the employer could not have reasonably anticipated the liability of the special fund prior to the consideration of the claim by the district director.

20 C.F.R. § 702.321(b)(3).

Universal Maritime takes the position that it is covered by the first sentence of 702.321(b)(3) because there has never been a finding of maximum medical improvement with regard to Moore's back and because Moore did not claim permanent disability of any kind until after the case had been referred to the OALJ. Universal Maritime thus maintains that the ALJ erred in relying on 20 C.F.R.§ 702.321(b)(3) to bar its belated attempt to raise § 8(f) entitlement because the regulation makes the absolute defense an affirmative defense which must be raised by the district director.

In this case, no such affirmative defense was raised since the employer neither submitted an application for relief to the district director nor actually raised the issue at the hearing before the ALJ. The employer first sought to assert special fund liability in a petition for reconsideration made after the ALJ awarded permanent total disability benefits. At that point, the ALJ rejected it as untimely. But Universal Maritime also appears to contend that since it was not barred by the affirmative defense provisions of the regulation and because it gave notice purporting to reserve its right to later raise the issue of § 8(f) liability prior to the hearing before the ALJ, it was under no time restriction with regard to actually arguing its claim for special fund liability, thereby entitling it to address the liability after the ALJ awarded benefits for permanent and total disability.

The Director of the Office of Workers Compensation Programs concedes, and we agree, that the ALJ erred in relying on 20 C.F.R.

16

§ 720.321 to hold that the request for § 8(f) relief was untimely filed. As noted, the regulation makes this defense, while absolute, an affirmative defense, and such defense was never raised. Indeed, the district director was not even a participant in the litigation at the time that the employer attempted to raise § 8(f) liability. Furthermore, under this circular regulation, it appears that if the exception to the requirement of filing an application for § 8(f) relief with the district director, embodied in the first sentence of the subsection, is met, the regulation prohibits the director from attempting to raise the affirmative defense of untimeliness. See 20 C.F.R.§ 702.321(b)(3) ("The absolute defense will not be raised where permanency was not an issue before the district director").

The Director contends, however, that notwithstanding the inapplicability of 20 C.F.R. § 720.321, Universal Maritime remains obligated under § 8(f) to submit a documented application for § 8(f) relief at the earliest time that it was aware of the claimant's alleged permanent disability and the possibility of special fund relief. In this case, therefore, the Director asserts that the employer had an obligation to litigate the special fund's liability fully at the hearing before the ALJ on the merits of Moore's claim.

As the legislative history summarized above indicates, the 1984 amendment to the Act was designed to advance to a point even earlier in the claim process the employer's obligation to raise entitlement to § 8(f) relief. The earlier the entitlement was alleged, the better the position of the district director to evaluate and controvert special fund liability if it were not appropriate. Although the regulations promulgated under the 1984 amendments were designed to preserve the availability of the relief in cases in which the issue of § 8(f) relief could not be anticipated during the period of informal claim consideration before the deputy commissioner -- cases in which there was then no claim of permanency -- in general, they do not provide for a bifurcated liability determination process. See 51 Fed. Reg. 4270, 4278-79 (Feb. 3, 1986) (rejecting suggestion of bifurcating process). The Director thus has not construed the 1984 amendment and its regulations as doing away with the previously-established requirement that special fund liability be both raised and documented at the earliest possible opportunity. Absent a clear congressional intent to the contrary, we afford deference to a reasonable construction of the Act

17

by the Director because of his policy-making authority with regard to the Act. See Pittman Mechanical Contractors, Inc. v. Director, OWCP, 35 F.3d 122, 125 (4th Cir. 1994), and authorities collected therein.

Universal Maritime presents no legitimate excuse for not presenting its § 8(f) claim at the hearing before the ALJ on the merits of Moore's claim. On its Amended Pre-hearing Statement dated June 23, 1993, it "reserve[d] the right to pursue relief under § 908(f) of the Act if the Court finds that the back injury claimed by Mr. Moore is related to his job related accident." Again, on another Amended Pre-hearing Statement dated October 28, 1993, it stated that it would "present for resolution at formal hearing . . . [the issue of] 8(f) relief." Yet, at the hearing it failed to make a § 8(f) claim or to raise the issue. We are aware of no special circumstances compelling us to excuse this failure. It is true that in order to have raised and argued the issue before the ALJ, Universal Maritime would have been required to make an argument which was conditional and in part contradictory to its position on the merits of Moore's claim, since it did not concede that Moore in fact had suffered any permanent, totally disabling injury at all. But in civil litigation, parties regularly argue alternative and contradictory theories, and that requirement was expressly accepted in the promulgation of the regulations. See 51 Fed. Reg. 4270, 4278 (Feb. 3, 1986); Verderane, 772 F.2d at 778-79; American Bridge Division, 679 F.2d at 83; Fed. R. Civ. P. 8(e)(2). Indeed, the continuing obligation to raise and argue § 8(f) liability at the first possible opportunity is indicated in 33 U.S.C. § 908(f)(3) itself which excuses the failure to file only where the issue could not reasonably be anticipated "prior to the issuance of a compensation order."

Accordingly, we conclude that the ALJ did not err in concluding that Universal Maritime forfeited its § 8(f) claim by its failure to raise the issue at the initial hearing before the ALJ on the merits of Moore's claim.

VIII

In summary, we vacate the Board's order affirming the ALJ's award of permanent total disability benefits to Moore and remand the case for further proceedings consistent with this opinion.

VACATED AND REMANDED

18