**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MCLEAN CONTRACTING COMPANY,
INC.; ST. PAUL FIRE & MARINE
INSURANCE COMPANY,
Petitioners,

v.

No. 98-1689

LANNY L. MIDKIFF; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
Respondents.

On Petition for Review of an Order
of the Benefits Review Board.
(No. 98-223)

Argued: January 29, 1999

Decided: March 10, 1999

Before WILKINSON, Chief Judge, and LUTTIG and
TRAXLER, Circuit Judges.

_____

Affirmed by unpublished opinion. Judge Luttig wrote the opinion, in
which Chief Judge Wilkinson and Judge Traxler joined.

_____

**COUNSEL**

**ARGUED:** Robert Alan Rapaport, CLARKE, DOLPH, RAPAPORT,
HARDY & HULL, P.L.C., Norfolk, Virginia, for Petitioners. Kevin

William Grierson, JONES, BLECHMAN, WOLTZ & KELLY, P.C., Newport News, Virginia, for Respondents. **ON BRIEF:** Dana Adler Rosen, CLARKE, DOLPH, RAPAPORT, HARDY & HULL, P.L.C., Norfolk, Virginia, for Petitioners. Richard B. Donaldson, Jr., JONES, BLECHMAN, WOLTZ & KELLY, P.C., Newport News, Virginia, for Respondents.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

LUTTIG, Circuit Judge:

Petitioners McLean Contracting Company and St. Paul Fire and Marine Insurance Company challenge the Benefits Review Board's decision upholding the award of disability compensation and medical expenses to respondent Lanny L. Midkiff under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. #8E8E # 901-950. We affirm.

I.

At the time of the relevant events, respondent Lanny L. Midkiff ("Midkiff") worked as an ironworker for a subcontractor of petitioner McLean Contracting Company ("McLean") in Norfolk, Virginia. On Friday, June 12, 1992, while performing repair work on a bridge on the Lafayette River, Midkiff slipped on a ladder and scraped his left shin. The wound bled through his trousers, but did not appear to be serious; Midkiff went home early, treated the wound there, and did not see a doctor. Midkiff then spent the following day -- his day off from work -- with his son, who was installing a pier in the James River. Midkiff spent much of the day standing in the river. Soon after, Midkiff's left leg became infected with vibrio vulnificus, a harmful bacterium that has been found in the James River. The infection led to complications arising from Midkiff's preexisting diabetes, ulti-

2

mately resulting in total disability from blindness and degeneration of the kidneys.

Midkiff subsequently commenced this action under the LHWCA, seeking disability compensation and medical expenses. On October 24, 1995, the administrative law judge ("ALJ") denied Midkiff's claim. He ruled that Midkiff's claim fell within the scope of coverage under the LHWCA. However, he ruled that Midkiff failed to satisfy the LHWCA's causation requirement. The ALJ first reasoned that Midkiff had introduced evidence that he had suffered a harm that could have been caused by a work-related incident, as was necessary to invoke the presumption of causation in section 20(a) of the LHWCA, 33 U.S.C. § 920(a). He then acknowledged that McLean had introduced no rebutting evidence regarding a subsequent intervening cause which was sufficient to overcome the presumption. However, he proceeded to conclude that Midkiff failed to demonstrate that his disability was the "natural and unavoidable" consequence of the work-related injury, and not of his subsequent wading in the James River, and therefore rejected the claim.

On January 28, 1997, the Benefits Review Board ("Board") reversed and remanded. The Board reasoned that the ALJ erred by requiring Midkiff to demonstrate that the disability was the natural and unavoidable result of the work-related injury. Because, as the ALJ had found, McLean had introduced no evidence of a subsequent intervening cause, the Board concluded that McLean had failed to rebut the presumption of causation under section 20(a).

On September 24, 1997, on remand from the Board, the ALJ awarded disability compensation and medical expenses to Midkiff, reiterating from its earlier opinion that McLean had failed to introduce sufficient evidence to rebut the section 20(a) presumption. On April 9, 1998, the Board affirmed. McLean and its insurer, St. Paul Fire and Marine Insurance Company, now petition for review.

II.

The sole issue on appeal is the application of the section 20(a) presumption of causation. In relevant part, section 20 reads:

> In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary--
>
> (a) That the claim comes within the provisions of this chapter.

33 U.S.C. § 920. As we have previously noted,"[this] presumption is a broad one, and advances the facility with which claims are to be treated to further the Act's purpose of compensating injured workers regardless of fault." Universal Maritime Corp. v. Moore, 126 F.3d 256, 262 (4th Cir. 1997).

Petitioners make two primary arguments regarding the section 20(a) presumption. First, petitioners contend that the ALJ erred by invoking the section 20(a) presumption at all, on the ground that respondent failed to make out even a prima facie case for causation. In order to invoke the section 20(a) presumption, a claimant must demonstrate that he sustained a harm and that an incident occurred at his workplace that could have caused the harm. See, e.g., Konno v. Young Bros., Ltd., 28 B.R.B.S. 57, 59 (1994); Cairns v. Matson Terminals, Inc., 21 B.R.B.S. 252, 253 (1988). In this case, it is undisputed that respondent sustained a harm -- namely, his resulting total disability -- and that an incident occurred at his workplace -- namely, the cut to his shin -- that was certainly a "but for" cause of the harm, and could have been the entire cause of the harm. Because respondent met this burden, we conclude that the ALJ properly invoked the presumption.

Second, petitioners contend that the ALJ erred by finding that the section 20(a) presumption had not been rebutted. In order to rebut the section 20(a) presumption, an employer must offer"substantial evidence" that an intervening cause was responsible for the harm to the employee. See, e.g., Universal Maritime, 126 F.3d at 262. Such evidence must be "specific and comprehensive" and"sufficient to sever the causal connection between the injury and the employment." Bass v. Broadway Maintenance, 28 B.R.B.S. 11, 15 (1994).

Petitioners contend that respondent was exposed to the vibrio vulnificus bacterium that caused his infection while he was standing in

4

the James River the day after his initial injury at work. In support of this theory, petitioners introduce two primary pieces of evidence. First, petitioners cite respondent's own testimony, in which he stated that the bacterium that had infected his leg had"got in there from the James River." J.A. at 39; see also id. at 54 (same). Second, petitioners cite the medical report of Dr. P.G. Haggerty, in which Haggerty noted that "the brackish waters of the lower James River [were] ideal sites for the development of vibrio infections." Id . at 174b.[1]

We agree with the ALJ that these pieces of evidence do not constitute "substantial evidence" sufficient to rebut the section 20(a) presumption. Respondent's own testimony as to the source of the infecting bacterium is evidently speculative. Further, although Haggerty stated that the bacterium may have been found in the James River, and also noted that respondent had spent time standing in the James, Haggerty did not assert that Midkiff was actually infected while standing in the James; at most, he only hinted at the possibility. Importantly, neither Haggerty nor any of the other medical experts asserted that the bacterium was found only in rivers, much less only in the James River.[2] While we do not minimize the likelihood that

---

[1] In fact, the waters of the James are home to a veritable cornucopia of chemical and biological pollutants. See, e.g., Rex Springston, Toxic Chemicals Found in Fish Catch in Hopewell: Raises Questions on Human Risk, Richmond Times-Dispatch, Dec. 24, 1998, at B1 (discussing "[a]n alphabet soup of pollutants . . . found in the James River," including PCBs, DDT, and TBT); Gilmore To Seek $48 Million More for Cleaning Up State's Waterways, Roanoke Times & World News, Dec. 8, 1998, at B3 (describing sewer overflows into the James at Lynchburg and Richmond); Holly A. Heyser, James, Elizabeth Near Top of River Pollution List, (Norfolk) Virginian-Pilot & Ledger Star, Sep. 11, 1998, at B5 (noting that the James ranks as the third most toxic river in Virginia and first in terms of "persistent toxic metals"); Scott Harper, Lower James Is Closed for Second Time This Year: Pollutants Pose Problem, (Norfolk) Virginian-Pilot & Ledger Star, April 4, 1998, at B1 (reporting closure of river due to "unsafe levels" of"fecal coliform -- bacteria that can carry diseases," resulting from inflow of"fertilizer, mud, animal wastes and nutrients").

[2] Indeed, when asked at oral argument whether Haggerty had testified "as to the cause" of respondent's infection, counsel for petitioners acknowledged that Haggerty had not, and conceded that Haggerty had only talked generally about bacterial levels in the James River.

Midkiff was in fact infected by the bacterium in the James, on the basis of the record before us, there is simply no evidence of this. On the record as developed and presented to us, it is possible that respondent could have been infected with the bacterium anywhere, including on the job at the time of the initial injury. Consequently, because petitioners failed to introduce any evidence, much less substantial evidence, that Midkiff was infected while standing in the James River, rather than at Midkiff's place of employment, we uphold the ALJ's conclusion that petitioners failed to rebut the section 20(a) presumption.**3**

Petitioners make two further arguments regarding the application of the section 20(a) presumption, both of which we reject. First, petitioners contend that the Board should have upheld the ALJ's original decision requiring respondent to introduce evidence that his disability was the "natural and unavoidable" consequence of his work-related injury. In so arguing, petitioners cite the Supreme Court's recent decision in <u>Director, Office of Workers' Compensation Programs</u> v. <u>Greenwich Collieries</u>, 512 U.S. 267 (1994). In <u>Greenwich Collieries</u>, the Court held that a provision of the Administrative Procedure Act placing the burden of proof on the proponent of an action was applicable in LHWCA cases. <u>See id</u>. at 270-71. However, the Court did not extend this rule to statutory presumptions such as the one in section 20(a), and indeed indicated that such presumptions-- including the presumptions in section 20, which it specifically enumerated -- remained undisturbed by the Court's broader holding regarding the burden of proof in LHWCA actions more generally. <u>See id</u>. at 280. Because <u>Greenwich Collieries</u> left the section 20(a) statutory presumption intact, petitioners' argument is unavailing.

Second, petitioners assert that the ALJ should have denied benefits under this court's recent decision in <u>Universal Maritime</u>. Petitioners' reliance on <u>Universal Maritime</u>, however, is simply inapposite. Petitioners contend that, in <u>Universal Maritime</u>, we held that the section 20(a) presumption is inapplicable whenever an employer presents <u>any</u>

_____

**3** In the alternative, petitioners contend that respondent was negligent either in wading in the James River or in failing to seek medical treatment immediately after the infection became apparent. Having reviewed the record, we agree with the ALJ that there is insufficient evidence to support a finding of negligence on either ground.

6

evidence casting doubt on the employer's prima facie case for causation. As noted above, however, we in fact held only that the section 20(a) presumption "falls out of the case" when an employer offers "substantial evidence to rebut the presumption." Universal Maritime, 126 F.3d at 262. In Universal Maritime, therefore, we simply reiterated, rather than altered, the traditional burden-shifting scheme under section 20(a). Because petitioners failed to introduce substantial evidence of a subsequent intervening cause, they failed to meet their burden of rebuttal, and therefore are subject to the section 20(a) presumption.

CONCLUSION

The judgment of the Benefits Review Board is affirmed.

AFFIRMED