UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

LARRY I. ELLIOTT,
Petitioner,

v.

NEWPORT NEWS SHIPBUILDING AND

DRY DOCK COMPANY; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
Respondents.

No. 96-2736

On Petition for Review of an Order
of the Benefits Review Board.
(94-490)

Argued: May 6, 1998

Decided: July 22, 1998

Before NIEMEYER and MICHAEL, Circuit Judges, and
FRIEDMAN, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Friedman wrote the majority
opinion, in which Judge Niemeyer joined. Judge Michael wrote a dis-
senting opinion.

_____

COUNSEL

ARGUED: John Harlow Klein, RUTTER & MONTAGNA, L.L.P.,
Norfolk, Virginia, for Petitioner. Benjamin McMullen Mason,

MASON & MASON, P.C., Newport News, Virginia, for Respondents.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

FRIEDMAN, District Judge:

Petitioner Larry Elliott (Elliott) appeals from the Benefits Review Board's (the Board) summary affirmance of the Administrative Law Judge's (ALJ) denial of his claim for permanent total disability benefits under the Longshoreman and Harbor Workers' Compensation Act (the Act), 33 U.S.C. §§ 901-950 (1994). For the reasons that follow, we affirm.

I.

In June 1989, Elliott was injured while working for the Newport News Shipbuilding and Dry Dock Company (the Company) when he dropped a laminated steel plate on his left foot. Elliott went to the Company's clinic immediately after the injury, and followed with a visit to the Riverside Hospital for treatment. Elliott did not return to work until January 1990, when his treating physician, Dr. Stiles, released him for work with the restrictions from standing on his feet for prolonged periods of time and from climbing. After four days back at work, Elliott complained that his foot was swelling and left work. On February 2, 1990, Dr. Stiles changed the restrictions he placed on Elliott's work by requiring that he sit while working.

Additionally, Dr. Stiles referred Elliott to a rheumatologist, Dr. Maxwell. Dr. Maxwell released Elliott to return to work but restricted him from working while standing for more than five to ten minutes, or from walking more than one or two blocks without rest. Dr. Stiles also referred Elliott to a vocational rehabilitation counselor who

2

determined that Elliott was of low to average intelligence and capable of performing sedentary and light duty supply work jobs. Elliott was additionally seen by an orthopedist, Dr. Weitzman, who stated that Elliott could perform a predominantly sitting job requiring only a small amount of walking and standing.

The Company looked for a job for Elliott within the Company based on the restrictions identified by his doctors. By a letter dated September 13, 1991, the Company instructed Elliott to report to the Company clinic prepared to work on September 17. On September 16, 1991, Dr. Maxwell modified Elliott's restrictions to avoid any job that required walking or standing. On September 17, 1991, Elliott reported to the Company clinic with Dr. Maxwell's note from the September 16 appointment. When he again complained of swelling in his foot, he was excused and told to return on September 23, 1991, for work within his restrictions.

Elliott never returned to the Company. Instead, Elliott sought an award of permanent disability benefits under the Act from September 1991, to the present. The ALJ denied Elliott's claim on November 16, 1993. On September 12, 1996, the Board summarily affirmed the ALJ. This appeal follows.

II.

Under ordinary circumstances, this Court reviews the decision of the Benefits Review Board to determine if the Board followed the statutory standard of review in evaluating the ALJ's factual findings. Newport News Shipbuilding and Dry Dock Co. v. Director, Office of Workers' Compensation Programs, 131 F.3d 1079, 1080-81 (4th Cir. 1997). In this case, the Board affirmed the ALJ's decision without an opinion.[1] Since there is no Board opinion for this Court to review, the

_____

[1] The Board never specifically addressed the merits of Elliott's appeal. Instead, on September 12, 1996, the Board sent the parties a notice that pursuant to the provisions of Public Law Number 104-134, enacted on April 26, 1996, all appeals to the Board pending for one year or more and relating to claims under the Act were deemed affirmed. Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, § 101(d), 110 Stat. 1321-218 (1996). Elliott's appeal met these criteria and, therefore, was affirmed by the Board on September 12, 1996.

3

ALJ's findings of fact must be upheld if supported by substantial evidence. Id.

To prevail on a claim of total disability, a claimant must establish a prima facie case that he cannot return to his regular or usual employment due to a work-related injury. See Universal Maritime Corp. v. Moore, 126 F.3d 256, 263 (4th Cir. 1997) (citing Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 542 (4th Cir. 1988)). If a claimant is able to show that he is unable to do his regular or usual work, then the burden shifts to the employer to show that a suitable alternative to employment exists. Id. Even if the employer can meet its burden, the claimant may still prevail for disability benefits if he can show that he diligently sought employment, and was unable to secure a suitable position. Id.

III.

In this case, the claimant, Elliott, easily meets his prima facie burden since the Company concedes that Elliott cannot return to his regular employment due to his injury. Therefore, the burden shifts to the Company to show that a suitable alternative to Elliott's regular employment existed. The Company was made aware of Elliott's work restrictions on September 17, 1991, when he reported to work with Dr. Maxwell's September 16 note. Being aware of the restrictions on Elliott's work capabilities, the Company nevertheless told Elliott to report back on September 23 prepared to work. As explained above, Elliott did not report as instructed.

The question in this case is whether the Company's instruction to return prepared to work is sufficient to meet its burden of providing suitable alternative employment. An employer can meet its burden by showing that suitable work is available within the geographic area and that the claimant could obtain a position if he or she diligently tried. Trans-State Dredging v. Benefits Review Board (Tarner), 731 F.2d 199, 201 (4th Cir. 1984) (describing the shifting burden where a claimant is seeking disability benefits under the LHWCA). Additionally, an employer can also meet its burden by offering the claimant a position within its company. In Darby v. Ingalls Shipbuilding, Inc., 99 F.3d 685, 688 (5th Cir. 1996), the Fifth Circuit held that an employer's offer of a suitable job in the claimant's current place of

4

work sufficed to discharge the burden of establishing suitable employment. Similarly in this case, the Newport News Shipbuilding Company offered Elliott a position after reviewing the medical limitations the various doctors had imposed on Elliott's work, i.e., no standing, walking or lifting. Additionally, as the ALJ acknowledged, Elliott's educational background and work history made him capable of performing sedentary work.

The record in this case does not reveal the exact employment position the Company had in mind for Elliott, nor does it reveal whether the position would necessarily have been suitable for his physical restrictions. Had the Company written a letter to Elliott with a precise offer for alternative employment, the result in this case would be more obvious. However, the absence of a written offer of an exact position is not necessarily fatal to the Company's position. In Universal Maritime Corp., we declined to impose additional administrative burdens on employers responding to a claim of total disability. Universal Maritime Corp., 126 F.3d at 264 (citations omitted) (finding that an employer may meet its burden of demonstrating available employment in a local market by relying on standardized job descriptions). Similarly here, we decline to substantially increase the employer's burden without "commensurate benefit." Id. The record reflects that on September 13, 1991, the Company clinic, being aware of Elliott's physical condition and limitations, requested that Elliott report to the clinic on September 17, "prepared to work," or, if he was unable to come to the Clinic, that he notify them. **2** Elliott reported to the clinic on September 17, and delivered a copy of what at that time was his most recent Doctor's note from September 16. Based on his complaints of foot pain and swelling, he was sent home. However, significantly he was asked to return on September 23 to work.

The missing link in this case is not the absence of a written offer from the Company. On September 17, the Company, being completely aware of Elliott's work restrictions as defined by doctors as recently as September 16, asked Elliott to return to work on September 23. The missing link, if any, is the result of Elliott's personal decision to not return prepared for work on September 23, indicating his

_____

**2** The clinic notes reflect that from as early as July 1991, the Company was attempting to find suitable employment for Elliott. See JA 30.

5

unwillingness to work in a position the Company located based on his restrictions. See Trans-State Dredging v. Benefits Review Bd., 731 F.2d 199, 201 (4th Cir. 1984) (finding that once the employer demonstrates the existence of alternative employment, the claimant must demonstrate a willingness to work). After considering the information in the record, the ALJ found and this Court agrees that substantial evidence supports the conclusion that the Company met its burden by locating a suitable alternative position for Elliott, and that Elliott effectively declined the Company's offer by failing to report to the clinic on September 23.

IV.

There is substantial evidence in the record to support the ALJ's decision to deny Elliott's request for total disability benefits. Therefore, the ALJ's decision is affirmed.

AFFIRMED

MICHAEL, Circuit Judge, dissenting:

The issue in this case is whether Newport News has satisfied its burden of proving the existence of available employment that Elliott could perform within his physical and educational limitations. Although Newport News presented evidence that it instructed Elliott to report back to its medical clinic ready to work, no evidence was admitted to show that the company actually had any job openings at that time. Because Newport News failed to present any evidence that it had a single position available, let alone one that would satisfy Elliott's physical restrictions and educational qualifications, the company did not meet its light evidentiary burden. The record is therefore devoid of the substantial evidence needed to affirm the ALJ. Because of that, I respectfully dissent.

As the majority correctly notes, a burden shifting scheme is used to determine whether a claimant is totally disabled under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950. See See v. Washington Metro. Area Transit Auth., 36 F.3d 375, 380 (4th Cir. 1994); Newport News Shipbuilding & Dry Dock Co. v.

6

Tann, 841 F.2d 540, 542 (4th Cir. 1988). If a claimant can establish that he is incapable of returning to his prior job, he has proven a prima facie case of total disability. See See , 36 F.3d at 380. The burden then shifts to his employer, who may rebut disability by proving the existence of "suitable alternative employment available upon a reasonably diligent search by the claimant." Id. If the employer meets this burden, the "claimant may then counter [the] showing of suitable alternative employment by demonstrating a diligent but unsuccessful search for such employment." Id. It is undisputed that Elliott proved a prima facie case, so the question before us is whether Newport News met its burden of establishing the existence of suitable alternative employment.

There are several ways for an employer to do this. It can satisfy its burden by showing that the claimant actually performed a job after his injury. See Brooks v. Director, OWCP, 2 F.3d 64, 65 (4th Cir. 1993) (per curiam). More commonly, however, the employer's burden is satisfied by "presenting evidence of other jobs that are available in the relevant geographic market for which the claimant is physically and educationally qualified." Universal Maritime Corp. v. Moore, 126 F.3d 256, 264 (4th Cir. 1997). This may be done by producing employment listings or newspaper advertisements for positions whose occupational requirements (according to the Dictionary of Occupational Titles) satisfy the restrictions of the claimant. See id. at 264-65. Similarly, the employer may discharge its burden by showing that it had a specific, suitable job within the company and that it offered this job to the claimant. See Darby v. Ingalls Shipbuilding, Inc., 99 F.3d 685, 688 (5th Cir. 1996). These showings are not difficult to make. And, as the majority observes, Universal Maritime declined to "substantially increase the employer's [evidentiary] burden," 126 F.3d at 264. See Op. at 5. What the majority ignores, however, is that Universal Maritime explicitly held that an employer must still meet its burden "by demonstrating the availability of specific jobs in a local market and by relying on standard occupational descriptions to fill out the qualifications for performing such jobs." Id. at 265 (emphasis added). Newport News did not even attempt to offer evidence to satisfy this requirement.

Instead, the company would have us accept its unproven assertion that it had a suitable job available for Elliott but that he never showed

7

up to take it. We might assume that this is true, but that is not enough. When a party bears the burden of persuasion on an issue, it cannot rely on argument alone, as Newport News attempts to do here. Newport News's obligation to prove the existence of suitable alternative employment was not a heavy or complicated one. A witness from the personnel department might have testified about any suitable (open) positions within the company. Even an internal job posting or want ads from a local newspaper might have been sufficient to satisfy the company's burden. But here we have nothing. As the majority candidly acknowledges, "[t]he record . . . does not reveal the exact employment position the Company had in mind for Elliott, nor does it reveal whether the position would necessarily have been suitable for his physical restrictions." Op. at 5.* Because Newport News has failed to present evidence indicating the existence of a single position that would serve as suitable alternative employment for Elliott, I would hold that it failed to meet its burden of persuasion.

Unlike the majority, I fail to see any material similarity between this case and the Fifth Circuit's decision in Darby. Cf. Op. at 4-5. In Darby the employer not only offered Darby a position in the company after his injury, the company actually employed Darby in this position for nearly a year before he claimed that it was not suitable employment. See 99 F.3d at 687. Moreover, evidence demonstrated "Darby's satisfactory performance of his modified job responsibilities" during this year. See id. at 688. Darby therefore was a case where the employer identified a specific job with known physical and educational requirements and the claimant successfully performed it for nearly a year after his injury. The differences between Darby and this

_____

*Although the majority says that "[t]he Company looked for a job for Elliott within the Company based on the restrictions identified by his doctors," Op. at 3, I do not believe the evidence supports even this modest conclusion. The medical clinic notes from July 1991 cited by the majority, See Op. at 5 n.2, state that "[w]e need to determine if work can be provided within the restrictions now available." J.A. 30. The notes add, "I told [Elliott] . . . that he needed to take the [physical restriction paperwork] to his dept. to see if they had a sit-down job that he could do." J.A. 30. This evidence does not indicate that the company in fact looked for a position. Indeed, these medical notes suggest that the company had yet to conduct any such search.

8

case could not be more pronounced. This case does not contain one bit of evidence that an alternative position existed at Newport News or that it would have met Elliott's physical restrictions and educational qualifications. What we have here is the employer's bare assertion that such a job existed, with no facts of record to back it up.

The majority nevertheless maintains that the "missing link" in this case results not from the absence of Newport News's proof but rather from Elliott's decision not to return to the clinic ready to work. See Op. at 5. This muddles the second and third stages of the burden shifting scheme. Elliott's decision not to pursue the company's invitation to return may affect his ability to demonstrate a"diligent but unsuccessful search for . . . employment," See, 36 F.3d at 380, in the third phase of the proof scheme, but it does not affect whether Newport News has met its burden of proof in the second. Our cases require an employer to prove first that there are available jobs before a claimant must show an unsuccessful but diligent search for a position. If it has not been proven that there are jobs that meet the claimant's limitations, he does not need to demonstrate a diligent search. That is the substance of our proof scheme. Elliott's failure to return is simply irrelevant to the question of whether Newport News has met its burden of showing that suitable alternative employment existed in the first place. On the record before us, the only possible conclusion is that no such job existed.

Today we have excused the employer from its burden of proof. Because bare assertions do not constitute substantial evidence and because the majority's approach abandons our precedent on the employer's burden, I respectfully dissent.

9