# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 15, 2013

No. 12-20228

Lyle W. Cayce
Clerk

INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA; SERVICE EMPLOYEES INTERNATIONAL, INCORPORATED,

Plaintiffs-Appellants

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS; GLEN VICKERS,

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
4:09-CV-01998

Before KING, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants appeal from the district court's judgment affirming a decision of the Benefits Review Board that affirmed an Administrative Law Judge's decision awarding temporary total disability and medical benefits to Defendant-Appellant Glen Vickers. For the reasons that follow, we reverse the Board's decision, vacate the award for Vickers's polyneuropathy, and remand to

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-20228

the ALJ for a determination of whether Vickers's polyneuropathy naturally or unavoidably resulted from the work-related arm injury cited in his claim.

## I. FACTS AND PROCEDURAL HISTORY

Defendant-Appellee Glen Vickers is a former employee of Plaintiff-Appellant Service Employees International, Inc. ("SEI"). While Vickers was working for SEI in Iraq as a logistics coordinator, his left arm was severely injured in a tank fuel adapter explosion on August 14, 2004. Eleven days later, Vickers traveled to Texas and had surgery on his left arm performed by Dr. Roger Sessions, an orthopedic surgeon. Vickers was released to full duty in December 2004, and he returned to Iraq that January. In April or May 2005, Vickers developed a gastrointestinal illness that lasted four or five days. He returned to Texas in August 2005 and saw Dr. Roger Sessions for another operation on his arm—a carpal tunnel syndrome release.

Around November and December 2005, Vickers began to experience numbness, stinging, tingling, and pain in areas other than his left arm: mainly his right arm and shoulder, both of his legs, and his neck. On the basis of an EMG, Vickers was referred to Dr. Joseph Vaughan, a neurophysiologist, who diagnosed him with an autoimmune disorder known as chronic inflammatory demyelinating polyneuropathy ("CIDP").[1]

On December 21, 2006, Vickers filed a claim for compensation seeking permanent total disability benefits from SEI and its insurance carrier, Plaintiff-Appellant Insurance Company of the State of Pennsylvania (collectively

---

[1] Also called "chronic inflammatory demyelinating polyradiculoneuropathy," CIDP is a rare, acquired, immune-mediated inflammatory disorder of the peripheral nervous system. The disease is believed to be caused by immune cells—which normally protect the body from foreign infection—attacking the body's nerves. Affected nerves fail to respond to stimuli, causing pain, progressive muscle weakness, tingling, and numbness. *See All About CIDP*, GBS/CIDP Foundation International, http://www.gbs-cidp.org/home/cidp/cidp; *Chronic Inflammatory Demyelinating Polyneuropathy (CIDP) Information Page*, Nat'l Inst. of Neurological Disorders & Stroke, http://www.ninds.nih.gov/disorders/cidp/cidp.htm.

No. 12-20228

"Plaintiffs"), under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, *et seq.*, as amended and extended by the Defense Base Act ("DBA"), 42 U.S.C. § 1651, *et seq.* Specifically, Vickers's claim sought compensation for Vickers's arm injury and for injuries to "other parts of [his] body, [and] other related problems associated with [his] injury and working conditions in Iraq."

The Administrative Law Judge ("ALJ") awarded Vickers temporary total disability benefits for the injury to his arm and for his CIDP. The ALJ invoked the 33 U.S.C. § 920(a) presumption (the "Section 20(a) presumption") that Vickers's CIDP was work-related based on Dr. Vaughan's testimony that Vickers's gastritis, in conjunction with the surgeries for his work-related arm injury, could have precipitated his CIDP. The ALJ found that the opinion of one Dr. Maudlin—who reviewed Vickers's conditions based upon documents that Plaintiffs provided—was sufficient to rebut the presumption that the arm injury caused Vickers's polyneuropathy. However, the ALJ also found that Dr. Maudlin did not address the effect of Vickers's gastritis or his surgeries on the development of his CIDP, and thus, that the Section 20(a) presumption linking this condition to his employment was not rebutted.

Plaintiffs appealed to the Benefits Review Board ("BRB"), and sought reversal on the grounds that the ALJ erred in finding the evidence sufficient to invoke the Section 20(a) presumption as to Vickers's CIDP and in finding the evidence insufficient to establish rebuttal of the presumption. The BRB affirmed the ALJ's decision. Plaintiffs then filed a motion for reconsideration, arguing that our decision in *Amerada Hess Corp. v. Dir., OWCP*, 543 F.3d 755 (5th Cir. 2008), which was decided after the BRB's decision, mandated reversal of the ALJ's decision. The BRB found *Amerada Hess* distinguishable from this case because the claim Vickers filed included the "sequelae of the arm injury." In summary, the BRB's analysis consisted of the following steps: first, the BRB

made the legal determination that employers are liable for sequelae resulting from the original injury alleged in the claim filed; second, it found that Vickers made a claim for sequelae, including his CIDP, by claiming injuries to "other parts of [his] body, [and] other related problems associated with [his] injury and working conditions in Iraq"; and third, it determined that the ALJ properly applied the presumption to conditions "that were part of the claim filed," including Vickers's CIDP, in light of Dr. Vaughan's testimony that Vickers's "disabling CIDP could have been precipitated by his initial arm injury or the subsequent surgeries therefore." Thus, it denied the motion for rehearing.

Plaintiffs timely filed a notice of appeal in the district court, challenging the benefits granted to Vickers for his CIDP, and asking it to reverse the BRB's decision as to this alleged claim. On February 29, 2012, the district court denied Plaintiffs' request for reversal and affirmed the BRB's decision.

Plaintiffs timely appealed to this court raising four issues concerning the benefits awarded to Vickers for his CIDP. First, Plaintiffs contend that the ALJ erred by not applying the *Amerada Hess* standard and correspondingly, by applying the Section 20(a) presumption to Vickers's CIDP, which, Plaintiffs claim, is a secondary condition to which the presumption does not apply. Second, Plaintiffs argue that the inclusion of a catch-all clause in Vickers's claim for compensation did not convert potential allegations of illness or secondary conditions (such as his CIDP) into primary claims subject to the Section 20(a) presumption. Third, Plaintiffs argue that the ALJ erred in finding that Vickers established a prima facie case through Dr. Vaughan's testimony, because Dr. Vaughan did not pinpoint the cause of Vickers's gastritis and polyneuropathy. Finally, Plaintiffs argue that the ALJ erred in finding that they did not offer substantial evidence to rebut Vickers's prima facie case, even though, they maintain, the record contains expert testimony that Vickers's CIDP was not related to his working conditions in Iraq.

No. 12-20228

## II. STANDARD OF REVIEW

In an appeal of a claim under the LHWCA as extended by the DBA, we review the decisions of the BRB to determine whether it adhered to the proper scope of review: namely, "whether the ALJ's findings of fact are supported by substantial evidence and are consistent with the law." *Gulf Best Elec., Inc. v. Methe*, 396 F.3d 601, 603 (5th Cir. 2004). Under the LHWCA, the BRB must uphold the factual findings of the ALJ if they are rational and supported by substantial evidence in the record taken as a whole. 33 U.S.C. § 921(b)(3); *Gulf Best*, 396 F.3d at 603. Substantial evidence is "that relevant evidence—more than a scintilla but less than a preponderance—that would cause a reasonable person to accept the fact finding." *Coastal Prod. Servs., Inc. v. Hudson*, 555 F.3d 426, 430 (5th Cir. 2009). As the factfinder, the ALJ is exclusively entitled to assess the weight of the evidence and credibility of witnesses. *Ceres Gulf, Inc. v. Dir., OWCP*, 683 F.3d 225, 228 (5th Cir. 2012) (citations omitted); *see Mendoza v. Marine Pers. Co.*, 46 F.3d 498, 500-01 (5th Cir. 1995) (citing *Mijangos v. Avondale Shipyards*, 948 F.2d 941, 945 (5th Cir. 1991) (holding that the BRB may not reweigh evidence or make its own credibility determinations)). We review the BRB's legal conclusions de novo. *Tarver v. Bo–Mac Contractors, Inc.*, 384 F.3d 180, 181 (5th Cir. 2004). Moreover, we accord no deference to the district court's conclusion as to whether the record supports the administrative determination. *H.B. Zachry Co. v. Quinones*, 206 F.3d 474, 477 (5th Cir. 2000).

## III. DISCUSSION

Plaintiffs contend that the BRB erred in affirming the ALJ's decision as to Vickers's CIDP because the ALJ's findings with respect to this illness were unsupported by substantial evidence and inconsistent with the law. Plaintiffs raise four issues concerning Vickers's CIDP: (1) whether the ALJ's application of the Section 20(a) presumption to Vickers's CIDP was proper; (2) whether CIDP was properly included in Vickers's claim for compensation; (3) whether

No. 12-20228

Vickers made a prima facie case that his CIDP was a work-related injury; and (4) whether Plaintiffs presented substantial evidence in rebuttal of the presumption. We address the first and second issues together, and do the same for the third and fourth.

## A.  Section 20(a) Presumption

### 1.  *Relevant LHWCA Provisions*

The LHWCA provides that "compensation shall be payable under this chapter in respect of disability . . . of an employee, but only if the disability . . . results from an injury occurring" at a covered situs 33 U.S.C. § 903(a). "Disability" is defined, in relevant part, as an "incapacity because of injury." 33 U.S.C. § 902(10). And "injury" is defined as an "accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury . . . ." 33 U.S.C. § 902(2). The Supreme Court has determined that the phrases "arising out of" and "in the course of" are separate requirements for establishing an injury: "the former refers to injury causation; the latter refers to the time, place, and circumstances of the injury." *See U.S. Indus./Fed. Sheet Metal, Inc. v. Dir., OWCP*, 455 U.S. 608, 615, (1982) (hereinafter *U.S. Industries*). "Not only must the injury have been caused by the employment, it also must have arisen during the employment." *Id.* To make a claim for compensation under the LHWCA, an injured employee "must timely file a claim with the Deputy Commissioner" that gives notice of the injury and contains "a statement of the time, place, nature, and cause of the injury." *Id.* (quoting 33 U.S.C. § 912(b)).

The LHWCA also specifies the order of proof in compensation cases. Section 20(a) of the Act provides: "[in] any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary . . . [t]hat the claim comes within the

provisions of this chapter." 33 U.S.C. § 920(a). To invoke the presumption, a claimant must offer a prima facie case that he (1) suffered a "harm," and (2) a workplace condition "could have caused, aggravated, or accelerated" the harm. *Conoco, Inc., v. Dir., OWCP*, 194 F.3d 684, 687 (5th Cir. 1999). If the claimant establishes a prima facie case, "the burden shifts to the employer to rebut it through facts—not mere speculation—that the harm was not work-related." *Id.* at 687-88. If the employer rebuts the presumption, it drops out of the case, and the ALJ must weigh the totality of the evidence to determine whether the injury arose out of the claimant's employment. *Del Vecchio v. Bowers*, 296 U.S. 280, 286-87 (1935); *U.S. Indus.*, 455 U.S. at 612 n.6 (noting that it seems fair to assume that the Section 20(a) presumption is of the same nature as the presumption created under Section 20(d) of the LHWCA, as construed in *Del Vecchio*); *Amerada Hess*, 543 F.3d at 761. Throughout this burden-shifting process, the claimant retains the burden of persuasion.

    *2.*    Amerada Hess

The ALJ applied the Section 20(a) presumption to Vickers's CIDP. In affirming the ALJ's decision, the BRB also found the presumption applicable. Plaintiffs argue that the BRB erred in affirming the ALJ's decision because Vickers's CIDP was not included in his claim, and at most was a secondary injury to which the Section 20(a) presumption does not apply under the reasoning in *Amerada Hess*. 543 F.3d at 761-62.

In *Amerada Hess*, the claimant sought benefits for a heart condition that allegedly resulted from treatment—steroid use and surgery—for work-related back and groin injuries. *Id.* at 758-59. The ALJ invoked the Section 20(a) presumption, found that the employer did not rebut the presumption, and awarded compensation and medical benefits related to claimant's heart condition. *Id.* at 759. The BRB affirmed, holding that if the claimant's heart

problems arose as a consequence of the steroid injections he received as treatment for his work injury, then his heart problems were work-related. *Id.*

We reversed the BRB's decision in that case for reasons that mirror the issues Plaintiffs now raise on appeal. First, we found that the ALJ and BRB erred in applying the Section 20(a) presumption to claimant's alleged heart condition because it was not part of his original claim, which was for his back and groin injury. *Id.* at 761 (noting that the presumption applies to the claim) (citing *U.S. Indus.*, 455 U.S. at 613). Second, we decided that the Section 20(a) presumption did not apply to claimant's heart condition because it was a secondary injury to which the presumption did not apply:

> In sum, we hold that the statute does not support a presumption that any medical condition that an injured claimant suffers after a work-related injury is caused by the work-related injury. Furthermore, not all "secondary" injuries are covered under the LHWCA simply because the claimant demonstrates a subsequent harm that could have stemmed from the covered injury. Instead, to receive benefits under the LHWCA for a subsequent injury, the claimant must present substantial evidence that the secondary condition "naturally or unavoidably" resulted from the first covered injury, as is required by the statute.

*Id.* at 763 (citation omitted). As discussed, Plaintiffs argue that Vickers did not refer to his CIDP in his claim, and that his CIDP is at most a secondary injury subject to the "naturally or unavoidably" causation standard we articulated in *Amerada Hess*. Since these issues are related, we address them together.

*3.    Analysis*

Vickers's claim requested compensation for his arm injury of August 14, 2004, and for "other related problems associated with [this] injury and working conditions in Iraq." Plaintiffs argue that this catch-all clause did not convert potential allegations of illness or secondary conditions (such as his CIDP) into primary claims subject to the Section 20(a) presumption.  We agree.

No. 12-20228

The Supreme Court has stated clearly that the Section 20(a) presumption applies to the claim. *U.S. Indus.*, 455 U.S. at 612-13. In addition, the Court has stated that "[a] prima facie 'claim for compensation,' to which the statutory presumption refers, must at least allege an injury that arose in the course of employment as well as out of employment." *Id.* at 615. In other words, "the presumption cannot apply to a claim that has never been made." *Id.* at 614. Rather, the claim must contain "a statement of the time, place, nature, and cause of the injury." *Id* at 613. A general reference to a nonspecific injury or illness will not suffice:

> This statement must be more than a mere declaration that the employee has received an injury or is suffering from an illness that is related to his employment; it must contain enough details about the nature and extent of the injury or disease to allow the employer to conduct a prompt and complete investigation of the claim so that no prejudice will ensue.

*Id.* at 613 n.6 (internal quotations and citation omitted). Although the Act's pleading requirements have some flexibility, "there is a point beyond which the sweeping-aside of 'technicalities' cannot go." *Id.* at 613 n.7. And in this case, Vickers's claim went beyond that threshold.

Vickers's claim for "other . . . problems associated with [his arm] injury and working conditions in Iraq" is exactly the sort of vague declaration that the Supreme Court in *U.S. Industries* deemed insufficient to constitute a "claim" to which the Section 20(a) presumption applies. Although Defendants maintain that this case is distinguishable from *U.S. Industries* in that the claimant in that case filed a claim for a specific injury, and did not leave open the possibility that the claim could include other, related injuries, this reasoning is unpersuasive. The conclusion that the vague allegations in that claim should not receive the statutory presumption was not contingent on the claimant's failure to allege a catch-all category of injury. Indeed, trying to differentiate these cases on this

basis requires circular reasoning (i.e., the catch-all statement in Vickers's claim is unproblematic because the claim in *U.S. Industries* did not involve a catch-all statement). *U.S. Industries* is apposite, and pursuant to the Court's reasoning therein, Vickers did not assert a primary claim for gastrointestinal symptoms or CIDP to which the Section 20(a) presumption applies.

Because the Section 20(a) presumption does not apply to Vickers's CIDP, the BRB and ALJ erred in applying it to that illness. Since Vickers's CIDP allegedly resulted from an autoimmune response owing to some combination of the gastritis he contracted in Iraq and the surgeries for his arm, they should have applied the more stringent "naturally or unavoidably" causation standard used to assess whether secondary conditions are eligible for benefits. *See Amerada Hess*, 543 F.3d at 763. In *Amerada Hess*, we echoed the determination in *U.S. Industries* that the Section 20(a) presumption applies only to injuries specifically referenced in the claim. *Id.* at 761-62. Moreover *Amerada Hess* held that where the alleged injury does not arise "out of and in the course of" employment, it is a secondary injury subject to the "naturally or unavoidably" standard. *Id.* at 763. As we explained in *Amerada Hess*, the LHWCA "does not support a presumption that any medical condition that an injured claimant suffers after a work-related injury is caused by the work-related injury," and "not all 'secondary' injuries are covered under the LHWCA simply because the claimant demonstrates a subsequent harm that could have stemmed from the covered injury." *Id.* Rather, "to receive benefits under the LHWCA for a subsequent injury, the claimant must present substantial evidence that the secondary condition 'naturally or unavoidably' resulted from the first covered injury, as is required by the statute." *Id.*

Just as the claimant in *Amerada Hess* failed to reference a work-related injury in his claim, Vickers's description of "other related problems" was insufficient to trigger the Section 20(a) presumption. And just as in *Amerada*

*Hess*, where the claimant's heart problem was deemed "secondary," Vickers's CIDP is properly understood as a secondary injury because it allegedly arose from an autoimmune response to the surgeries related to his work-related arm injury referenced in the claim and the gastritis he allegedly contracted due to working conditions in Iraq. Accordingly, we hold that Vickers's CIDP is subject to the causation standard for secondary injuries. *Id.* at 761-62. In order to recover for his CIDP, Vickers must "present substantial evidence" that it "'naturally or unavoidably' resulted from the first covered injury"—namely, his arm injury. *Id.* at 763. Whether his CIDP "naturally or unavoidably" resulted from his work-related arm injury is a question for the ALJ to decide on remand.

## B.    Prima Facie Case and Rebuttal

Because the preceding analysis forms the basis for our judgment, we do not need to address the final two issues that Plaintiffs have raised: that the ALJ erred in finding that Vickers established a prima facie case through Dr. Vaughan's testimony, and that the ALJ erred in finding that Plaintiffs did not present substantial evidence in rebuttal concerning Vickers's prima facie case. These issues involve the application of the Section 20(a) presumption, which does not apply to Vickers's CIDP for the reasons discussed.

## IV. CONCLUSION

For the reasons provided, we REVERSE the BRB's decision and order, VACATE the ALJ's award of temporary total disability benefits for Vickers's CIDP, and REMAND to the ALJ for a determination of whether his CIDP naturally or unavoidably resulted from his work-related arm injury.

JAMES E. GRAVES, JR., Circuit Judge, concurring.

I agree with the majority that *Amerada Hess* mandates reversal. Nevertheless, I believe the *Amerada Hess* majority erred in finding that the presumption created by § 20(a) of the LHWCA is inapplicable to a "secondary" injury or an injury not expressly listed on the original claim form. In that connection, I find Judge Reavley's concurrence persuasive. *See Amerada Hess Corp. v. Dir., OWCP*, 543 F.3d 755, 764-66 (5th Cir. 2008) (Reavley, J., concurring) (noting that, for purposes of the § 20(a) presumption, because worker's injury listed on original claim form arose out of his employment, "any injury resulting from treatment for that injury should also be presumed to have arisen out of the employment and the primary injury.").