UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 15-2525**

---

METRO MACHINE CORPORATION, d/b/a General Dynamics NASSCO-
Norfolk; SIGNAL MUTUAL INDEMNITY ASSOCIATION, LIMITED,

  Petitioners,

 v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR; DELORES STEPHENSON,

  Respondents.

---

On Petition for Review of an Order of the Benefits Review Board.
(2014-0425)

---

Argued: December 8, 2016        Decided: January 20, 2017

---

Before TRAXLER, FLOYD, and THACKER, Circuit Judges.

---

Petition denied by published opinion. Judge Traxler wrote the
opinion, in which Judge Floyd and Judge Thacker joined.

---

**ARGUED:** Frank Nash Bilisoly, VANDEVENTER BLACK, LLP, Norfolk,
Virginia, for Petitioners. Gregory Edward Camden, MONTAGNA,
KLEIN, CAMDEN, LLP, Norfolk, Virginia; Matthew W. Boyle, UNITED
STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents.
**ON BRIEF:** M. Patricia Smith, Solicitor of Labor, Rae Ellen
James, Associate Solicitor, Mark Reinhalter, Counsel for
Longshore, Sean G. Bajkowski, Counsel for Appellate Litigation,
Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR,
Washington, D.C., for Respondent United States Department of
Labor.

TRAXLER, Circuit Judge:

Metro Machine Corporation and Signal Mutual Indemnity Association, Limited, petition for review of an order of the Benefits Review Board affirming decisions of an ALJ granting a claim for medical benefits under the Longshore and Harbor Workers' Compensation Act ("the Act"), see 33 U.S.C. § 907. Finding no reversible error, we deny the petition.

I.

Before setting out the facts underlying this appeal, we will begin with a brief discussion of some of the relevant legal concepts.

The Act "creates a comprehensive federal scheme to compensate workers injured or killed while employed upon the navigable waters of the United States." Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 470-71 (1992). The Act requires employers to furnish medical care to employees who suffer an "injury" within the meaning of the Act. 33 U.S.C. § 907. As is relevant here, "injury" is defined as an

> accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury.

33 U.S.C. § 902(2). "Arising 'out of' and 'in the course of' employment are separate elements: the former refers to injury causation; the latter refers to the time, place, and

2

circumstances of the injury." U.S. Indus./Fed. Sheet Metal, Inc. v. Director, OWCP, 455 U.S. 608, 615 (1982) ("U.S. Industries"). "Through what has come to be known as the aggravation rule, the courts have extended [§ 902(2)'s)] definition such that, if an employment injury aggravates, accelerates, or combines with a previous infirmity, the entire disability is compensable." Newport News Shipbuilding & Dry Dock Co. v. Fishel, 694 F.2d 327, 329 (4th Cir. 1982).

Because Congress recognized that the elements of § 902(2) "would be difficult to prove," Director, OWCP v. Greenwich Collieries, 512 U.S. 267, 280 (1994), Congress provided the § 20(a) presumption, the proper interpretation of which is a central issue in this appeal. The statute describing the presumption provides, "In any proceeding for the enforcement of a claim for compensation under this Act it shall be presumed, in the absence of substantial evidence to the contrary . . . [t]hat the claim comes within the provisions of this Act." 33 U.S.C. § 920(a).

The parties agree that to invoke the presumption, an employee must allege a prima facie case that "(1) an injury or death (2) . . . arose out of and in the course of (3) his maritime employment." Universal Maritime Corp. v. Moore, 126 F.3d 256, 262 (4th Cir. 1997). To establish this prima facie case, a claimant must show "(1) that he suffered physical harm

3

and (2) that a workplace accident or workplace conditions <u>could</u> <u>have</u> caused, aggravated, or accelerated the harm." <u>Bath Iron</u> <u>Works Corp. v. Fields</u>, 599 F.3d 47, 53 (1st Cir. 2010) (emphasis added). Once the prima facie case is established, the burden of production shifts to the employer, who must produce evidence that could justify a reasonable factfinder in concluding that the claimant either did not suffer physical harm or that no workplace accident or workplace conditions caused, aggravated, or accelerated the harm. <u>See</u> <u>id.</u>; <u>accord</u> <u>Moore</u>, 126 F.3d at 262-63. If the employer satisfies this burden, the presumption falls out of the case, and the factfinder is left to find the necessary facts without considering the presumption. <u>See</u> <u>Moore</u>, 126 F.3d at 262-63.

## II.

We now turn to the facts before us. John Stephenson ("Claimant") worked for Metro Machine Corporation as a pipefitter in Virginia from August 1983 until August 2011. He has a long history of breathing problems. He suffered from asthma until he was approximately eight years old, and he began smoking when he was 16. He has received treatment for bronchitis caused by his smoking since the early 1980s. And he received treatment for a productive cough and wheezing in 1985 and 1986. Additionally, he regularly suffered from bronchitis during winters, and his bronchitis was treated with antibiotics.

4

He has been taking steroids for his wheezing and coughing since 1986. He was diagnosed with chronic obstructive pulmonary disease[1] ("COPD") in 1996 and emphysema in 2001.

On February 18, 2008, Claimant was working in the superstructure of a vessel. During his workday, which lasted more than eight hours, he inhaled fumes from welding and burning and the application of epoxy paint ("the exposure"); inhaling these fumes caused him breathing problems. After Claimant finished his shift and went home, the problems continued all night, prompting him to go to the emergency room the next morning. At the hospital, he was diagnosed with "[e]xacerbation of chronic obstructive pulmonary disease." S.J.A. 1. He was admitted and remained hospitalized for eight days, during which time he was prescribed steroids, inhalers, empiric antibiotics, and albuterol to treat his COPD. Upon discharge, he was prescribed a nebulizer and oxygen concentrator, which he had not used prior to the hospitalization.

Metro paid Claimant compensation for temporary total disability from February 19, 2008, through August 3, 2008, and later for temporary partial disability from September 16, 2009, through September 29, 2009. When he returned to work, he was

---

[1] COPD is "any disorder characterized by persistent or recurring obstruction of bronchial air flow, such as chronic bronchitis, asthma, or pulmonary emphysema." Dorland's Illustrated Medical Dictionary 530 (32nd ed. 2012).

5

restricted from going aboard the ship and limited in the amount of weight he could lift.

Claimant voluntarily retired in 2011. Since his retirement, he has begun using his oxygen concentrator more frequently. He has continued taking the same medications he took when he was hospitalized, but he has increased his dosages. He reports that his coughing has improved over time although his shortness of breath has worsened.

In October 2011, Claimant was treated for a fracture at the T7 vertebra by Dr. Alireza Jamali. Dr. Jamali stated in an office note that the fracture was "most likely due to excessive coughing." S.J.A. 8. In February 2012, Dr. Jamali wrote that Claimant "required a long-term intake of the steroid for management of his respiratory condition," which "contributed to osteoporosis and pathological fracture of T7." S.J.A. 15. Dr. Jamali opined that the fracture was "directly due to long-term steroid intake" from the management of Claimant's respiratory condition. S.J.A. 15.

Asserting that his injuries were the result of the exposure, Claimant requested that Metro pay for his medical treatment. Metro refused and filed a notice of controversion on March 15, 2012, asserting that the treatment he had requested was not related to the exposure. On March 30, 2012, Claimant filed a claim for compensation, Form LS-203, under the Act. In

the spaces on the form calling for the date of the injury and a description of the accident, he answered "2/18/2008" and "exposure to fumes," and in the space calling for identification of the part of body affected, he answered, "Lungs." J.A. 11.

On May 15, 2012, a claims examiner held an informal conference. Memoranda memorializing the conference indicate that Claimant had sought medical benefits for both his ongoing COPD and his fractured vertebra. The claims examiner recommended payment of benefits for both conditions.

The ALJ held a hearing regarding the claim on September 25, 2013. The parties stipulated that Claimant injured his pulmonary organs on February 18, 2008; that the injury arose out of and in the course of Claimant's employment with Metro; and that the Act applies to the claim.

The medical evidence introduced at the hearing included the May 2013 deposition of Claimant's long-time treating physician, Dr. Ignacio Ripoll, who was board-certified in pulmonary medicine and had been a practicing pulmonary specialist for approximately 30 years. The evidence also included three letters Dr. Ripoll had written before the deposition concerning the possible causal relationship between the exposure and Claimant's worsening COPD. The letters evidenced Dr. Ripoll's changing views regarding the existence of such a causal relationship.

7

The ALJ summarized the contents of the three letters:

In a letter dated January 10, 2012, Dr. Ripoll wrote that Claimant suffers from severe COPD with a grade IV impairment using the AMA guides. Dr. Ripoll listed the dates and results of several pulmonary function tests beginning in June of 2008, noting that at that time Claimant's COPD was severe and deteriorating at a rate of three percent per year. Dr. Ripoll noted that Claimant had more symptoms after the 2008 exposure than prior to it and therefore found with a reasonable degree of medical certainty that the exposure worsened his pulmonary condition, which has declined since that time.

After receiving pulmonary function testing results dating back to January of 1986, Dr. Ripoll wrote a follow-up letter dated July 16, 2012. Dr. Ripoll opined that the historical data cast doubt on the role of fume exposures respecting Claimant's declining respiratory function. Dr. Ripoll stated that the data indicated that the exposure caused an acute pulmonary event, but did not affect the rate of progression of the underlying disease. Dr. Ripoll included the caveat that the November 2001 and January 2007 results could be artificially low due to some acute condition at those times and additional testing after the January 2007 values could indicate whether Claimant's lung function improved to a stable baseline.

A November 28, 2012 letter included a graph of Claimant's FEV1 [one-second forced expiratory volume results] from 1986 until 2011. Dr. Ripoll noted that the slope of Claimant's FEV1 decline changed after Claimant's exposure to fumes in 2008. Dr. Ripoll found that the rate of deterioration increased following the inhalation injury and thus concluded that it was highly likely that the February 2008 inhalation injury caused the rapid deterioration in lung function seen after that time.

J.A. 193-94 (citations omitted).

Finally, in his 2013 deposition, Dr. Ripoll described

Claimant's lung disease as "chronic obstructive lung disease or

8

chronic bronchitis, chronic inflammation." J.A. 43. He testified that Claimant's lungs had been irreparably damaged by his many years of smoking, and that his lung function would continue to deteriorate despite any medications he might take. Nevertheless, he testified that he continued to believe, to a reasonable degree of medical certainty, that the data showed a significant acceleration in the progression of the lung disease after the 2008 exposure.

Following the hearing, the ALJ found that Claimant established a prima facie case by showing a harm – the worsening of his COPD – and a work incident that could have caused or aggravated that harm. Therefore, he found Claimant entitled to the § 20(a) presumption that the worsening of his COPD was compensable.

The ALJ observed that Metro sought to show that any aggravation of Claimant's COPD caused by the exposure was only temporary. In support of this position, Metro submitted the opinion of Dr. Ripoll, along with treatment records. Given the contradictory and uncertain opinions that Dr. Ripoll had issued, however, the ALJ concluded that Dr. Ripoll's opinions were "entitled to little weight" and "insufficient to rebut the presumption. J.A. 205. Noting that no other evidence tended to show that any exacerbation of Claimant's COPD caused by the exposure was only temporary, the ALJ concluded that Metro had

9

not rebutted the § 20(a) presumption. He thus awarded Claimant past and future medical benefits for his work-related COPD.

Despite prevailing regarding the COPD, Claimant moved for reconsideration, contending that the ALJ had failed to address a part of his claim that the parties had addressed at the hearing, namely, his claim that he was entitled to medical treatment for his vertebra fracture. The ALJ granted the motion and proceeded to consider the compensability of the fracture. The ALJ rejected an argument by Metro that the § 20(a) presumption did not apply since the fracture was not specifically identified on Claimant's Form LS-203 that he had filed in March 2012. The ALJ further found that Claimant established a prima facie case linking his fracture to excessive coughing from, and the steroids he was prescribed for, his work-related COPD. Regarding Metro's attempt to rebut the prima facie case, the ALJ concluded that the fact that Claimant, prior to the exposure, had had respiratory problems and took steroids did not constitute evidence that the primary injury did not cause, aggravate, or hasten his fracture. Finding that Metro had not rebutted the presumption that the fracture was compensable, the ALJ awarded Claimant medical benefits for the fracture.

Metro appealed the decisions concerning the compensability of the COPD and fracture to the Board, which affirmed. The Board held that substantial evidence supported the ALJ's finding

10

that Claimant established a prima facie case regarding his COPD and thus that the ALJ properly invoked the § 20(a) presumption. The Board rejected an argument by Metro that Claimant needed to present medical evidence directly linking his COPD to the exposure to establish his prima facie case. The Board also concluded that the ALJ properly found that Metro failed to rebut the presumption on the basis that Dr. Ripoll's opinion was equivocal.

Regarding the vertebra fracture, the Board rejected an argument by Metro that the § 20(a) presumption does not apply to "secondary injuries," such as the fracture. The Board also rejected the argument that the presumption should not have applied because the fracture was outside the scope of Claimant's claim. The Board noted that Claimant had raised the claim for medical benefits regarding his fracture before both the district director and the ALJ, and Metro had not contended that it was surprised by the issue or that any late notice prejudiced its ability to defend against the claim.

Metro now petitions for review of the Board's decision.

### III.

Metro advances various arguments in support of its petition for review. We review the Board's decisions for errors of law and to determine whether the Board adhered to its standard of review. See Newport News Shipbuilding & Dry Dock Co. v. Harris,

11

934 F.2d 548, 550 (4th Cir. 1991). The Board's standard of review requires that the ALJ's findings of fact be considered "conclusive if supported by substantial evidence in the record considered as a whole." Newport News Shipbuilding & Dry Dock Co. v. Director, OWCP, 131 F.3d 1079, 1080 (4th Cir. 1997) (per curiam) (internal quotation marks omitted). And importantly, the Act "must be liberally construed in conformance with its [remedial] purpose." Northeast Marine Term. Co. v. Caputo, 432 U.S. 249, 268 (1977) (internal quotation marks omitted).

In this appeal, the Director of the Office of Workers' Compensation Programs of the Department of Labor (the "Director"), is a respondent. We afford deference to the Director's views concerning the construction of the Act because he has policy-making authority with regard to the Act. See Director, OWCP v. Newport News Shipbuilding & Dry Dock Co., 8 F.3d 175, 179 (4th Cir. 1993). When, as here, the Director is advancing his position in litigation, his position is "entitled to respect . . . to the extent that it has the power to persuade." West Virginia CWP Fund v. Stacy, 671 F.3d 378, 388 (4th Cir. 2011) (internal quotation marks and alteration omitted). We accord no deference to the Board's legal interpretation of the Act since the Board does not serve in a policy-making role. See Newport News Shipbuilding & Dry Dock Co. v. Stilley, 243 F.3d 179, 181 (4th Cir. 2001).

12

A.

Regarding Claimant's COPD, Metro contends that the ALJ erred in relying on Dr. Ripoll's opinions to find that Claimant had established a prima facie case. Metro argues that if Dr. Ripoll's opinions were too contradictory to rebut Claimant's prima facie case, they must also have been too contradictory to establish Claimant's prima facie case in the first place.

This issue is easily disposed of because the ALJ did not rely on Dr. Ripoll's opinions as a basis for finding that Claimant established his prima facie case. The ALJ found that "Claimant has demonstrated and [Metro] has agreed that a work related injury occurred February 18, 2008 when Claimant was exposed to welding and epoxy fumes, leading to an aggravation of his preexisting COPD." J.A. 203. Indeed, substantial evidence supported the ALJ's finding that Claimant established a prima facie case.[2] Claimant offered evidence that the day after the exposure, he was diagnosed with "[e]xacerbation of [COPD]" and hospitalized for eight days as a result. S.J.A. 1. The evidence showed that his COPD continued to worsen after that

_____

[2] Metro argues that it did not agree that the exposure aggravated his COPD but only stipulated that "Claimant injured his pulmonary organs on February 18, 2008 at [Metro's] place of business." J.A. 191. We need not address the effect of this stipulation in light of our conclusion that substantial evidence supported the ALJ's finding that Claimant established a prima facie case independent of any stipulation.

point as well, and his lung function never returned to its pre-exposure level. This evidence was easily sufficient to satisfy Claimant's "fairly light burden," Bis Salamis, Inc. v. Director, OWCP, 819 F.3d 116, 127 (5th Cir. 2016), to produce evidence raising the possibility that the exposure had permanently aggravated his COPD. Cf. Moore, 126 F.3d at 262 (holding that ALJ properly invoked presumption regarding claim for back problems when claimant testified that he experienced back pain immediately after the accident even though other evidence cast significant doubt on the credibility of that testimony and claimant had acknowledged that he had suffered back pain as a result of another prior injury); Champion v. S&M Traylor Bros., 690 F.2d 285, 295 (D.C. Cir. 1982) (holding that because "claim [wa]s supported by far more than enough evidence to remove it from the category of 'mere fancy,'" the presumption was invoked). And, regardless of Dr. Ripoll's changing opinions regarding whether he could say to a reasonable degree of medical certainty that the exposure did permanently worsen Claimant's condition, he never opined that it was not possible that the exposure had that effect.

Metro also suggests that the ALJ improperly required Metro, in order to rebut the presumption, to actually prove by a preponderance of the evidence that the exposure did not aggravate his lung condition. Again, Metro misstates what the

14

ALJ did. The ALJ applied the proper standard, requiring Metro to proffer evidence that <u>could allow a reasonable factfinder to infer</u> that Claimant's lung condition was not permanently aggravated by the exposure. <u>See</u> <u>Moore</u>, 126 F.3d at 262-63. And the ALJ rightly concluded that Dr. Ripoll's July 2012 opinion that there was no permanent aggravation from the exposure could not support such a reasonable inference since Dr. Ripoll had abandoned that opinion.

For all of these reasons, we conclude that substantial evidence supports the ALJ's order awarding Claimant medical benefits for his work-related COPD, and the Board was therefore correct to affirm.

## B.

Metro also argues that the Board erred in affirming the ALJ's decision granting Claimant medical benefits for his vertebra fracture.

## 1.

Some of Metro's arguments regarding the fracture relate to the differences, if any, between how the Act treats primary injuries – meaning compensable injuries that arise out of, and occur in the course of, employment – and secondary injuries – meaning other injuries that develop later as the result of primary injuries. We will begin by addressing those arguments.

15

Metro does not deny that a secondary injury can qualify as an "injury" within the meaning of 33 U.S.C. § 902(2), but Metro maintains that because the fracture was a secondary injury, it was compensable only if it "naturally or unavoidably result[ed]" from a primary injury. Metro also argues that because the fracture was a secondary injury and was not identified in Claimant's March 2012 claim form, the § 20(a) presumption should not have applied concerning the fracture's compensability regardless of whether Claimant established a prima facie case.

In questions of statutory interpretation, we begin with the language of the statute. See Dean v. United States, 556 U.S. 568, 572 (2009). If the statutory language is clear and unambiguous, "we are duty bound to give effect to that language." United States v. Ivester, 75 F.3d 182, 184 (4th Cir. 1996).

As we have discussed, the Act defines "injury," in relevant part, as an

> accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury.

33 U.S.C. § 902(2). There is no question that "the composition of [§ 902(2)] is awkward." Cyr v. Crescent Wharf & Warehouse Co., 211 F.2d 454, 456 (9th Cir. 1954). At the same time, it is apparent – and Metro does not dispute – that Congress included

in the definition of "injury" both "accidental injury . . . arising out of and in the course of employment" – primary injuries – and injuries that "naturally or unavoidably result[] from such accidental injury" – secondary injuries. See, e.g., Jones v. Director, OWCP, 977 F.2d 1106, 1110-12 (7th Cir. 1992); Cyr, 211 F.2d at 456.

2.

It is at this point in the analysis that the views of the various participants in this appeal diverge. Metro contends that because the vertebra fracture was not a primary injury, the ALJ erred in applying the § 20(a) presumption in determining its compensability. Relying on two split-panel decisions of the Fifth Circuit, Metro maintains that the presumption applies only to questions of whether alleged primary injuries are compensable and does not apply to questions of whether alleged secondary injuries are compensable. See Insurance Co. of State of Pa. v. Director, OWCP, 713 F.3d 779, 784-86 (5th Cir. 2013); Amerada Hess Corp. v. Director, OWCP, 543 F.3d 755, 761-63 (5th Cir. 2008). Claimant and the Director argue that these two decisions that Metro relies on were wrongly decided to the extent they conclude that the presumption does not apply to claims concerning secondary injuries. And the Director notes that one judge on each panel expressed disagreement with the majority's analysis. See Amerada Hess, 543 F.3d at 765 (Reavley, J.,

17

concurring) (concluding that the presumption should have applied to the secondary injury if the claimant had established a prima facie case, but concurring in the majority's result because the claimant failed to establish his prima facie case); see also Insurance Co. of the State of Pa., 713 F.3d at 786 (Graves, J., concurring) (noting that although the panel was bound to follow circuit precedent, he agreed with Judge Reavley that "the Amerada Hess majority erred in finding that the presumption created by § 20(a) of the [Act] is inapplicable to a 'secondary' injury or an injury not expressly listed on the original claim form").

We agree with the Claimant and the Director that the presumption applies to claims regardless of whether they concern secondary injuries. By its terms, the § 20(a) presumption is that the "claim comes within the provisions of th[e] Act." 33 U.S.C. § 920(a) (emphasis added). As we have explained, the Act allows claims regarding primary injuries, secondary injuries, or both. Section 20(a) does not distinguish between claims concerning primary injuries and those concerning secondary injuries, and in fact § 20(a) makes no reference to injuries at

18

all. Accordingly, we agree with the Director that the presumption unambiguously applies to all types of claims.[3]

Metro contends that U.S. Industries supports its argument that the presumption does not apply to secondary injuries, but we respectfully disagree with Metro's understanding of that decision. In U.S. Industries, the claim at issue asserted that the employee suffered an injury at work on November 19, 1975, when he was lifting duct work and felt a sharp pain in his neck. See 455 U.S. at 610, 612. The ALJ denied the claim, finding that the alleged accident actually had not occurred and that the employee and his co-worker had testified falsely regarding its occurrence. See id. at 610. A divided panel of the Board affirmed. The Court of Appeals vacated, however, on the basis that the employee could be found to have suffered an "injury" when he awoke in pain the day after the alleged accident; the Court of Appeals reasoned that an injury need not occur during work hours and need not be traceable to a specific work incident. See id. at 611. The Court of Appeals thus held that

---

[3] Additionally, we know of no reason why Congress would have put the initial burden on the claimant to produce evidence actually proving the causation link and other elements in secondary-injury cases while relieving claimants of that burden in other cases. See Director, OWCP v. Greenwich Collieries, 512 U.S. 267, 280 (1994) (noting that purpose of the § 920(a) presumption is "Congress' recognition that claims such as those involved here would be difficult to prove").

19

if the claimant did suffer such an injury, the § 20(a) presumption would apply to it. See id. at 611-12.

The Supreme Court granted certiorari and reversed, holding that the Court of Appeals had committed two errors. The first error concerned the scope of the employee's claim. The Court reasoned that the only claim the employee had made was that he was injured at work on November 19 in an accident the ALJ found had not actually occurred. See id. at 612. Because the employee had not claimed that any injury occurred on November 20, there could be no presumption that applied to any November 20 injury. See id. at 612-13. The Court noted that despite the existence of very liberal rules allowing the amendments of pleadings and variances between pleading and proof, such variances cannot be so great that they prejudice an employer's ability to defend against a claim. See id. at 613 n.7. In the case before the Court, the assertion of a November 20 injury was not supported by the claim form the claimant had filed "or by the evidentiary record." Id.

The Court also reasoned that the Court of Appeals erred in determining that the attack of pain claimant suffered on the morning of November 20 could qualify as an "injury" within the meaning of the Act. See id. at 615. That is so because for an injury to have occurred "in the course of employment," it "must have arisen during the employment," and thus a prima facie claim

20

for compensation must allege an injury that arose while the claimant was working. Id. However, the only such injury that the claimant had asserted in his claim was the November 19 injury that the ALJ had found did not actually occur. See id. at 615-16.

Metro argues that the attack of pain on the morning of November 20 in U.S. Industries was in essence a secondary injury and that that status as a secondary injury was the reason that the Supreme Court did not apply the § 20(a) presumption. We conclude this is a misreading of U.S. Industries. As the Director explains, U.S. Industries does not suggest that the § 20(a) presumption does not apply to claims of secondary injuries. Rather, the case merely stands for two propositions: (1) the presumption applies only to claims of injuries that are actually made, (2) a claim must include a primary injury, which, by definition, must arise during work.

In the present case, because the ALJ properly found that Claimant suffered a compensable primary injury – the exacerbation of his COPD – U.S. Industries poses no obstacle for him so long as his claim included the fracture. Metro does not appear to challenge the conclusions of the ALJ and the Board that Claimant's claim evolved to include the fracture even though the claim form he originally filed in 2012 had only explicitly mentioned his lung injury. And, U.S. Industries

21

specifically recognized that those making claims under the Act need not even make claims on claim forms and that "an informal substitute . . . may be acceptable if it identifies the claimant, indicates that a compensable injury has occurred, and conveys the idea that compensation is expected." Id. at 613 n.7 (internal quotation marks and alterations omitted). The Court also recognized that "considerable liberality is usually shown in allowing amendment of pleadings" and in allowing "variance between pleading and proof," so long as the amendment or variance is not so significant that the defendant's ability to defend itself is prejudiced. Id. (internal quotation marks and alterations omitted). On these facts, the ALJ and Board properly treated Claimant's claim to include the fracture. As the Board determined, Metro was not prejudiced by Claimant's failure to identify the fracture as part of his claimed injuries on his original claim form. Even if Metro had not previously been aware that Claimant sought medical benefits for the fracture, at the informal conference on May 15, 2012 – 16 months before the ALJ hearing – the Claimant expressly sought such benefits, as he did before the ALJ. The ALJ therefore correctly treated Claimant's claim as including the fracture and rightly concluded that the § 20 presumption would apply regarding the

22

compensability of the fracture if Claimant established a prima facie case.[4]

3.

Metro alternatively argues that, even assuming that the § 20(a) presumption can apply to secondary injuries, the ALJ erred by treating the fracture claim as if it were a primary-injury claim and thus failed to apply the "naturally or unavoidably results" standard. In this regard, we will discuss Claimant's attempt to establish his prima facie case separately from Metro's attempt to rebut the presumption.

a.

The ALJ noted that:

> [Metro argued that because] the T7 fracture was not included on the initial claim form, [the § 20(a) presumption does not apply and] Claimant must demonstrate that the fracture naturally or unavoidably arose from the original lung injury. In support, [Metro] cited two Fifth Circuit cases. This case is

---

[4] The Fifth Circuit's decisions in Insurance Company of the State of Pennsylvania and Amerada Hess holding that the § 20(a) presumption was not properly applied to the secondary injures seem to be primarily based on the courts' conclusions that the claims before them did not include the secondary injuries at issue, see Amerada Hess Corp. v. Director, OWCP, 543 F.3d 755, 761-62 (5th Cir. 2008); Insurance Co. of State of Pa. v. Director, OWCP, 713 F.3d 779, 785 (5th Cir. 2013), a circumstance that would distinguish the present case. To the extent that the Fifth Circuit decisions may also suggest that even a secondary injury that was included in the claimant's claim could not receive the benefit of the § 20(a) presumption, their reasons for adopting that position are simply not clear.

governed by the law of the . . . Fourth Circuit[, which] has not articulated such a standard.

J.A. 215 n.1. The ALJ found that Claimant established his prima facie case by producing evidence that "the workplace exposure accident could have caused, aggravated, or accelerated the [fracture]." J.A. 214. Other than in his description of Metro's argument, the ALJ made no reference to the "naturally or unavoidably results" standard in his analysis. We therefore are inclined to agree with Metro that the ALJ erred in failing to recognize that the "naturally or unavoidably results" standard applied.

Because that standard applied, the ALJ should have recognized that the compensability of the fracture depended on the fracture (or its aggravation or hastening) naturally or unavoidably resulting from the primary injury. Consequently, for Claimant to establish his prima facie case, the ALJ should have required him to produce evidence that the primary injury could have naturally or unavoidably caused, aggravated, or accelerated the fracture. Nevertheless, on the particular facts of this case, the ALJ's failure to consider naturalness or avoidability made no difference.[5]

---

[5] We note that the primary injury was part of the causal chain linking the exposure to the secondary injury, so the fact that the ALJ considered whether Claimant produced evidence of whether the exposure could have caused, aggravated, or (Continued)

24

The ALJ reasoned that Claimant demonstrated that the exposure permanently aggravated his COPD and that "features of the COPD, namely steroid treatment and excessive coughing," could have caused, aggravated, or accelerated the fracture. J.A. 214. Considering the exacerbation of Claimant's COPD – and resulting hospitalization – following the exposure, substantial evidence supported the ALJ's finding.

Because the fracture was not a primary injury, the ALJ should have gone the next step and considered whether Claimant produced evidence that the fracture (or its aggravation or hastening) could have naturally or unavoidably resulted from the primary injury, but this extra step would have posed no hurdle for Claimant on these facts. Regardless of any possible argument concerning whether the fracture or its aggravation or hastening naturally resulted, "naturally or unavoidably results" is a disjunctive requirement. See Jones v. Director, OWCP, 977 F.2d 1106, 1111 (7th Cir. 1992). Thus, Claimant could establish his prima facie case simply by showing that the fracture or its aggravation or hastening could have unavoidably resulted from

accelerated the fracture instead of whether the primary injury could have caused, aggravated or accelerated the fracture is of no moment. And Metro makes no complaint regarding this distinction.

25

the exacerbation of his COPD.[6]  But Metro has never suggested any way that Claimant could have avoided any effect that the exacerbation of his COPD had on his fracture.  Accordingly, were we to remand for reconsideration in light of the "naturally or unavoidably results" standard, the ALJ would certainly conclude, for the same reasons that he found Claimant proved that the fracture or its aggravation or hastening <u>could have resulted</u>, that it also <u>could have unavoidably resulted</u>.  We will not engage in such a futile exercise.  See <u>George Hyman Constr. Co. v. Brooks</u>, 963 F.2d 1532, 1539 (D.C. Cir. 1992).

### b.

Metro also maintains that even if the ALJ correctly invoked the § 20(a) presumption regarding the fracture, substantial evidence did not support the ALJ's finding that Metro failed to rebut the presumption.  We disagree.  Again, the ALJ, apparently not recognizing that he should be applying the "naturally or unavoidably results" standard, considered only whether Metro offered evidence sufficient to support a reasonable inference that the fracture was not caused, aggravated, or accelerated by the exposure.

---

[6] We offer no opinion regarding whether the "naturally" prong would have posed any obstacle to Claimant on these facts. See <u>Jones v. Director, OWCP</u>, 977 F.2d 1106, 1110-14 (7th Cir. 1992) (discussing "naturally or unavoidably results" standard).

26

Metro argues that the ALJ erred in concluding that the evidence that Claimant used steroids for 22 years prior to the exposure was not sufficient to support a reasonable inference that the fracture would have occurred regardless of whether the exposure occurred. We agree with the ALJ, though, that any such inference would not be reasonable, but instead would be based on mere speculation. There is no evidence whatsoever that any medical professional believed that the aggravation of Claimant's lung condition, his increased steroid use, or his increased cough did not hasten, aggravate, or cause the fracture. At best, Metro produced evidence that gave rise to a reasonable inference that <u>it was possible</u> that the fracture was not hastened, aggravated, or caused by the exposure. That was not enough to rebut the presumption.

And for the same reasons that we discussed regarding Claimant's establishment of his prima facie case, no purpose would be served by vacating and remanding for application of the "naturally or unavoidably results" standard as it pertains to Metro's attempt to rebut the presumption. Because Metro has not suggested any way that Claimant could have avoided the fracture (or its hastening or aggravation) once the exposure occurred, the ALJ would certainly find again on remand that Metro did not rebut the presumption.

IV.

In sum, because we conclude that the only error the ALJ committed was in failing to apply the "naturally or unavoidably results" standard to the fracture claim and because remand for application of that standard would be a futile exercise, given that there was no issue presented regarding avoidability, we deny Metro's petition for review of the Board's order affirming the ALJ's decision.

<u>PETITION DENIED</u>